James R. COHEN and Joanne D. Cohen, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 90–187 T.

United States Claims Court.

Aug. 6, 1991.

Jeffrey S. Bortnick, New York City, for plaintiffs. David Parker, of counsel.

Stuart J. Bassin, with whom were Asst. Attys. Gen. Shirley D. Peterson and David Gustafson, Washington, D.C., for defendant.

## OPINION and ORDER

TURNER, Judge.

This tax refund action stands on plaintiffs' motion for summary judgment and defendant's cross-motion for partial summary judgment. Plaintiffs seek a refund of two amounts they sent to the IRS following their receipt of a notice of deficiency. The primary issues for decision are (i) whether plaintiffs' first remittance to the IRS in partial satisfaction of the asserted deficiency, made prior to assessment and prior to the expiration of the statutory period for assessment, should be refunded on the sole ground that the subsequent deficiency assessment was untimely, and (ii) whether plaintiffs' second remittance, made after the untimely deficiency assessment, should be refunded on the ground that the assessment was untimely.

The parties agree on the material facts. For the reasons given below, plaintiffs' motion for summary judgment should be granted and defendant's cross-motion for partial summary judgment should be denied.

### I

The following facts are not in dispute.

In 1980 James Cohen was a limited partner in Somerville Associates, a New York limited partnership engaged in trading securities. In their 1980 joint federal income tax return, plaintiffs James and Joanne Cohen claimed a $75,933 deduction from gross income as a result of James Cohen's distributive share of losses from Somerville Associates.

In June 1984, the Cohens and an IRS official executed IRS Form 872–A, "Special Consent to Extend the Time to Assess Tax." The form provided in relevant part:

James R. Cohen and Joanne D. Cohen ... and the District Director of Internal Revenue consent and agree as follows:

(1) The amount(s) of any Federal income tax due on any return(s) made by or for the above taxpayer(s) for the period(s) ended December 31, 1980 may be assessed on or before the 90th (ninetieth) day after: (a) the [IRS] office considering the case receives Form 872–T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the [IRS] mails Form 872–T to the taxpayer(s); or (c) the [IRS] mails a notice of deficiency for such period(s); except that if a notice of deficiency is sent to the taxpayer(s), the time for assessing the tax for the period(s) stated in the notice of deficiency will end 60 days after the period during which the making of an assessment was prohibited.

In December 1985, the IRS proposed adjustments to the Cohens' 1980 and 1981 income tax. For 1980, the proposed adjustment was to disallow the claimed $75,933 deduction for limited partnership losses. On March 7, 1986, the Cohens filed a formal protest to the proposed adjustments.

In October 1986, the Cohens executed IRS form 872–T, which terminated their consent to extend the assessment period. The IRS received the termination notice on October 24, 1986.

On December 30, 1986, the IRS issued a notice of deficiency to the Cohens for 1980 and 1981; the IRS asserted that the Cohens were deficient with respect to 1980 in the amount of $42,502, and with respect to 1981 in the amount of $26,654. The notice was accompanied by a statement indicating that the IRS had disallowed the $75,933 deduction for 1980 limited partnership loss-

es.[1]  The notice of deficiency was also accompanied by IRS form 4089 which, if executed by the taxpayers, would have allowed the IRS to assess the deficiency immediately.

On March 26, 1987, the Cohens contested the asserted 1981 deficiency in the United States Tax Court.  Paragraph 5t. of their petition stated:

> The Petitioners intend to pay the alleged deficiency for 1980 in the annexed notice of deficiency.  The Petitioners intend to file a claim for a refund of the paid 1980 deficiency (and if the claim for refund is denied, litigate the issues therein in the United States [Claims Court]).

On April 23, 1987, James Cohen sent the IRS a check in the amount of $46,000, which the IRS received on April 28, 1987.  Cohen accompanied the check with a letter which stated in part:

> In accordance with the 90–day letter I received dated December 30, 1986 ..., I am enclosing Form 870 along with my check in the amount of $46,000.  The Form 870 reflects a waiver of restrictions on assessment of one-half of the asserted 1980 deficiency ($21,251).  The check is in partial payment of the proposed deficiency for the year ended December 31, 1980 in the sum of $21,251 for the 1980 tax deficiency and interest thereon of $24,749.

The Form 870 provided that the taxpayers consented to the immediate assessment

and collection of the deficiency indicated on the form, and that if the taxpayers later filed a claim for a refund and the IRS disallowed it, they could sue in the United States Claims Court for a refund.  The form indicated that it related to 1980 and that the amount of tax was $21,251, but the form was not signed by either James or Joanne Cohen.[2]

According to the Cohens' Certificate of Assessments and Payments for 1980, which is certified to be true and correct by an IRS official, the $46,000 remittance was posted to the Cohens' account as an "Advance Payment" on May 8, 1987.  The Certificate also indicates that on June 7, 1987, $51,-628.70 in interest on unpaid tax for 1980 was assessed against the Cohens, and that on August 20, 1987, a $42,502 deficiency for 1980 was assessed against the Cohens.

On August 20, 1987, the IRS issued a statement of tax due to the Cohens, reflecting an unpaid tax liability for 1980 in the amount of $94,130.70.  James Cohen responded by sending the IRS a check for $46,727.70, which was received by the IRS on September 4, 1987.  The letter accompanying the check asserted that the Cohens had already remitted $46,000 in partial satisfaction of their 1980 tax liability, that the Cohens were entitled to $1403 in interest on their $46,000 remittance running from April 28, 1987 to August 29, 1987, and that their outstanding tax liability for 1980 was therefore $46,727.70.[3]

---

1.  According to the IRS, the claimed losses, allegedly incurred as a result of so-called commodity straddle transactions, could not be recognized because it had not been shown "that the losses occurred or occurred in the manner claimed" and because the transactions "lack[ed] ... profit motive."  The record does not reflect what a commodity straddle transaction is, but for purposes of ruling on the pending dispositive motions, understanding the nature of the transactions is unnecessary.

2.  When a Form 870 relates to a tax year for which the taxpayers filed a joint return, Form 870 by its terms requires both spouses to sign.  In October 1986, Joanne Cohen appointed James Cohen her attorney-in-fact with respect to the Cohens' 1980 tax year.  Thus, James Cohen's signature, had it appeared on the Form 870, would have been sufficient.

3.  $46,000 received by the IRS on April 28, 1987, plus $1403 in claimed interest on the $46,000, plus $46,727.70 sent to the IRS on August 31, 1987, equals $94,130.70.

While dictum in *Rocovich v. United States,* 933 F.2d 991, 993–94 (Fed.Cir.1991), suggests that full payment of any interest and penalties assessed may be a jurisdictional prerequisite to a tax refund suit, the government takes the position regarding assessed interest that only full payment of tax is required if the taxpayer raises no independent issues regarding interest.  (No assessed penalties are involved in this case.)  We concur with the government's position.  *See Flora v. United States,* 362 U.S. 145, 171 n. 37, 80 S.Ct. 630, 644 n. 37, 4 L.Ed.2d 623 (1960) ("the statute [28 U.S.C. § 1346(a)(1) ] lends itself to a construction which would permit suit for the tax after full payment thereof without payment of any part of the interest").  *But see Katz v.*

On March 28, 1989, the Cohens filed a claim for a refund of $94,130.70 for 1980 with the IRS. In their administrative claim the Cohens argued that the principal amount of $42,502 and the $51,628.70 in interest had been assessed beyond the period of limitations for assessment. They argued in the alternative that even if the assessments were not time barred, the $75,933 loss for 1980 had been legitimately claimed. According to plaintiffs, the IRS did not act on their claim within six months. This action followed.

## II

In their complaint, the Cohens seek a $94,130.70 refund of tax and interest for 1980. The Cohens allege that the June 7, 1987 and August 20, 1987 assessments were untimely, and also allege that the claimed $75,933 partnership loss was legitimately deducted from their 1980 gross income.

Plaintiffs' motion for summary judgment asserts that the period of limitations for assessing a deficiency against them for 1980 expired May 29, 1987, that is, 60 days after the expiration of the 90–day period commencing December 30, 1986 (the date of the notice of deficiency). Plaintiffs contend that the June 8, 1987 and August 20, 1987 assessments were therefore untimely, and that for that reason they are entitled to a refund of all amounts remitted.

Defendant's cross-motion for partial summary judgment argues that as a matter of law the $46,000 credited to the Cohens' account on May 8, 1987 cannot be refunded even if the subsequent assessment was untimely, since the May remittance[4] was sent before the periods for assessment and for collection had expired. Defendant also contends that the facts of this case give rise to the inference that plaintiffs waived their right to contest the assessments as untimely.[5]

## III

We first address defendant's cross-motion for partial summary judgment.

Plaintiffs' position rests on two independent grounds. They claim entitlement to a refund because the IRS failed to timely assess the asserted deficiency for 1980, and even if assessment had been timely, because the IRS improperly disallowed the losses claimed for 1980. Assuming *arguendo* that defendant is correct that the May remittance may not be refunded on the sole ground that a timely assessment was not subsequently made, the question whether the limited partnership loss deductions were properly taken would remain unresolved. Nothing in defendant's motion for partial summary judgment relates to the allowability of the deductions, and nothing in plaintiffs' motion for summary judgment suggests that they have abandoned their position that they were entitled to take the deductions. Accordingly, defendant cannot prevail at this stage with respect to the May remittance.

Alternatively, assuming *arguendo* that the IRS timely assessed the deficiency following the May remittance—either because the Cohens waived the limitations period or because a longer limitations period applied—defendant is not entitled to judgment at this stage with respect to the May remittance. Again, the question whether the deductions were properly taken would be unresolved.

---

*United States,* 22 Cl.Ct. 714, 716 (1991) (defendant's position that payment of penalties and interest is required only in certain circumstances "contradicts the basic 'all or nothing' stature of a jurisdictional issue"); *Lambropoulos v. United States,* 18 Cl.Ct. 235, 237 (1989) (full payment of interest and penalties required before refund action can be brought).

**4.** The parties refer to the $46,000 remittance sent by the Cohens to the IRS on April 23, 1987 as "the May remittance" because it was credited to the Cohens' account on May 8, 1987. Similarly, the parties refer to the $46,727.70 sent by the Cohens to the IRS on August 29, 1987 as "the September remittance" because it was credited to the Cohens' account on September 4, 1987. We have adopted these convenient references to the two remittances.

**5.** Defendant also argued initially that a six-year limitations period for assessment "might" apply. The longer period applies when a taxpayer underreports gross income by more than 25%. 26 U.S.C. § 6501(e)(1)(A). Defendant withdrew this argument at the July 30, 1991 hearing on the cross-motions.

Defendant's cross-motion for partial summary judgment should therefore be denied.

## IV

Next, we address plaintiffs' motion for summary judgment. To reiterate, two remittances are at issue. The September remittance was made following the June and August assessments, whereas the May remittance was made before the assessments. We address the September remittance first in order to dispose of the issues common to both remittances, and in part V below we address the May remittance.

■ Under I.R.C. § 6401(a),[6] the "term 'overpayment' includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the period of limitation properly applicable thereto." A payment of tax that was assessed and paid after the expiration of the period of limitations on assessment constitutes an overpayment under section 6401(a) and should be refunded upon a timely claim for a refund. Rev.Rul. 74–580, 1974–2 C.B. 400 (1974). Thus, if plaintiffs are correct that the June 6, 1987 and August 20, 1987 assessments were untimely, then the September remittance should be refunded.

■ As a general matter, "the amount of any [internal revenue] tax ... [must] be assessed within 3 years after the return was filed." According to the Cohens' 1980 Certificate of Assessments and Payments, the Cohens filed their 1980 return on September 15, 1981. Thus, absent the June 1984 special consent to extend the time to assess tax, the IRS would have been required to assess any deficiency against the Cohens for 1980 by September 15, 1984. However, the Cohens and the IRS agreed that the IRS could assess a deficiency against the Cohens arising out of claimed 1980 limited partnership losses during the 60–day period commencing 90 days from the mailing of a notice of deficiency. The IRS mailed a notice of deficiency on De-

cember 30, 1986, so notwithstanding the provisions of section 6401(a), the IRS could have assessed a deficiency against the Cohens for 1980 between March 30, 1987 and May 29, 1987. According to defendant, the IRS assessed two separate amounts against the Cohens for 1980, $51,628.70 on June 7, 1987 and $45,502 on August 20, 1987. The two assessments were therefore untimely, and the September 4, 1987 remittance was an overpayment which should be refunded.

■ Defendant argues that plaintiffs waived their right to challenge the June and August assessments as untimely when James Cohen "filed" a Form 870 along with the $46,000 May remittance. The form provided that the taxpayers consented to the immediate assessment and collection of a $21,251 deficiency for 1980 and that the taxpayers would not be able to bring an action in the Tax Court relative to 1980.

■ We reject defendant's waiver argument for several reasons. First, even if the form might otherwise constitute a waiver of limitations on assessment, the Form 870 was not signed by either James or Joanne Cohen nor was it signed by an IRS official. *See* 26 C.F.R. § 301.6501(c)–1(d) (April 1, 1987) (period within which IRS must assess may be extended by written agreement signed by taxpayer and IRS representative). Second, the form specifically provided that if the taxpayers later filed a claim for a refund and the IRS disallowed it, the taxpayers could file a claim for a refund in the United States Claims Court. We decline to adopt defendant's approach, under which a Form 870 waiver means that the taxpayer reserves his right to file a refund claim *except* for a claim based on a subsequent untimely assessment; Form 870 by its terms does not contain such an exception, and we will not engraft one onto the form. Third, defendant cites no authority holding a Form 870 to be a waiver of the taxpayer's right to argue in a subsequent refund action that the assessment to

---

6. All citations in the form "I.R.C. § ___" are to the provisions of the Internal Revenue Code of 1986, 26 U.S.C. (1988 ed.).

which the Form 870 related was untimely. Fourth, the closest thing to a statement of purpose in Form 870 is that execution of the form "limit[s] any interest charge." Thus, the form allows the taxpayer to cut off the running of interest during the 90–day period when the IRS would otherwise be prohibited from assessing. This, as far as we can tell, is the only purpose of the form.[7]

Defendant concedes that a Form 870 normally does not result in a waiver of the taxpayer's right to rely on the period of limitations on assessment. However, defendant argues that the Form 870, coupled with the fact that plaintiffs sent the $46,-727.70 remittance in August 1987 following what they knew or should have known to be an untimely assessment, indicates that the Cohens may have meant to waive their right to rely on the limitations period for assessment. In this connection it must be remembered that had the Cohens failed to pay the amount indicated on the August 1987 statement of tax due within ten days, the IRS would have been free to seize the Cohens' property to satisfy the deficiency. I.R.C. § 6331. Further, the Cohens made clear at all relevant times that they contested liability for the proposed deficiency. Thus, the situation here is far different from that of *Horuff v. United States*, 80 Ct.Cl. 761, 9 F.Supp. 1016 (1935), upon which defendant relies for the proposition that acts following the running of the limitations period for assessment can sometimes constitute a waiver. In *Horuff*, the taxpayer, upon reexamining his own records years after filing a return, determined that he had underpaid his income tax. Without protest or prompting from the IRS, the taxpayer voluntarily made a payment of additional tax beyond the expiration of the limitations period for assessment. When the taxpayer later sued for a refund, the Court of Claims held that taxpayer had voluntarily waived his right to rely on the limitations period. Taxpayers like the Cohens, by contrast, who believe

that they owe no additional tax but make a payment in the face of imminent levy upon their property, cannot be said to have voluntarily waived their right to argue that the assessment was untimely. *Stange v. United States*, 282 U.S. 270, 51 S.Ct. 145, 75 L.Ed. 335 (1931), also relied upon by defendant, has no bearing on whether the Cohens waived their right to rely on the limitations period. In *Stange*, unlike the present case, the taxpayer and the IRS executed a written agreement waiving the limitations period on assessment after the period had expired.

In sum, in order to accept defendant's waiver argument, we would have to conclude that even though the Cohens in October 1986 terminated their consent to extend the time for assessment, and even though the Cohens at all times indicated that they disputed liability for the asserted deficiency, they nevertheless decided either in May or September of 1987 to excuse the IRS from making an assessment within the time required by law. Such a conclusion is not warranted. We hold that plaintiffs did not waive their right to contest the timeliness of any deficiency assessment for 1980 and that the June 7, 1987 and August 20, 1987 assessments were untimely. Accordingly, plaintiffs are entitled to a refund of their overpayment in the amount of $46,-727.70, which they remitted to the IRS following the untimely assessments.

## V

The remaining question is whether the Cohens are entitled to a refund of the $46,000 remittance credited to their account as an "Advance Payment" on May 8, 1987. In part IV above we concluded that plaintiffs did not waive their right to challenge the timeliness of the June 7, 1987 and August 20, 1987 assessments, and that those assessments were untimely. Thus, the issue for decision is whether the May remittance, made prior to the expiration of the period for assessment, should be refunded

---

7. We also reject defendant's suggestion that a Form 870 can be likened to an amended return under I.R.C. § 6501(c)(7), thereby extending the time for assessment. Section 6501(c)(7) applies

only when the IRS "receives a written document signed by the taxpayer showing that the taxpayer owes an additional amount of ... tax...."

on the ground that the subsequent deficiency assessments were untimely.

The Court of Claims repeatedly and unequivocally construed relevant tax statutes to deny refunds of tax payments made within the period for assessments even when no timely assessment thereafter occurred. "Taxes may be and often are collected without assessment, ... but, in such a case, the tax, if legally due, cannot be recovered merely because it had not been formally assessed." *Meyersdale Fuel Co. v. United States*, 70 Ct.Cl. 765, 783, 44 F.2d 437 (1930), *cert. denied*, 283 U.S. 860, 51 S.Ct. 653, 75 L.Ed. 1465 (1931). "[I]t is not necessary that a tax be assessed before it can be legally collected. If a tax is due and collected without assessment it cannot be recovered on that ground alone." *Muir v. United States*, 78 Ct.Cl. 150, 155–56, 3 F.Supp. 619 (1933). In *Crompton & Knowles Loom Works v. White*, 65 F.2d 132 (1st Cir.), *cert. denied*, 290 U.S. 669, 54 S.Ct. 89, 78 L.Ed. 578 (1933), the court ruled that a remittance to satisfy deficiency interest, which was sent to the IRS prior to the expiration of the period of limitations on assessment but which was not assessed in a timely fashion, was validly collected notwithstanding the subsequent untimely assessment and thus, was not refundable as an overpayment under I.R.C. § 607 (the forerunner of present-day I.R.C. § 6401). The Court of Claims expressly approved of the *Crompton & Knowles Loom Works* holding in *Anderson v. United States*, 83 Ct.Cl. 561, 577, 15 F.Supp. 216 (1936), *cert. denied*, 300 U.S. 675, 57 S.Ct. 668, 81 L.Ed. 880 (1937).

The Cohens argue that *Meyersdale Fuel Co.* was effectively overruled by later cases or, alternatively, that the later cases limit *Meyersdale Fuel Co.* to the situation where the taxpayer remits money prior to assessment, within the statutory period for assessment and without contest as to liability for the tax or deficiency. Plaintiffs' position is based on *Rosenman v. United States*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), and *Charles Leich & Co. v. United States*, 165 Ct.Cl. 127, 329 F.2d 649, *reh. den.*, 165 Ct.Cl. 151, 333 F.2d 871 (1964), which made a distinction between a "payment of tax" and a mere "deposit." According to the Cohens, the May remittance was a deposit when it was sent and did not become a payment of tax for purposes of I.R.C. § 6401(a) until the untimely assessments, and therefore the May remittance was an overpayment that should be refunded.

In *Rosenman*, the executors of the estate of Louis Rosenman remitted $120,000 to the IRS along with a letter which stated in part:

We are delivering to you ... an Estate check ... as a payment on account of the Federal Estate tax.... This payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due.

The remittance was made in 1934, within the period for paying the estate tax, but no assessment had been made. The IRS placed the $120,000 in a suspense account to the credit of the estate. In 1935 the estate filed a timely estate tax return, showing a tax due of $80,224. The IRS applied $80,224 of the $120,000 provisionally paid against the estate's self-assessed liability, and the estate filed a claim for a refund of the balance. In 1938, following an audit of the estate, the IRS determined that the estate actually owed $128,759 in tax. Accordingly, the IRS assessed a deficiency of $48,535 against the estate and applied the balance left in the suspense account, $39,776, to the assessed deficiency. The estate paid the balance of the deficiency plus interest, $10,497, that same year.

In 1940 the estate filed a claim for a refund of $24,717. The IRS allowed the refund claim to proceed with respect to the $10,497 paid in 1938, but rejected the claim for a refund of the remaining $14,220 as untimely. By statute, the estate had three years from the time it paid estate tax within which to bring a claim for a refund, and, according to the IRS, $14,220 of the deficiency had been paid in 1934 when the estate remitted the $120,000.

**724**

The Supreme Court held that payment of the deficiency had not been made until 1938 when the IRS applied the $39,776 left in the suspense account against the $48,535 deficiency. 323 U.S. at 661–62, 65 S.Ct. at 537–38. Payment of the deficiency could not have been made before 1938, because before that time there had been no deficiency assessed. *Id.* Hence, the $120,000 remittance was a deposit against future estate tax liabilities. 323 U.S. at 662, 65 S.Ct. at 538.

*Rosenman* has been interpreted to mean that a taxpayer's remittance prior to the expiration of the period for assessing a deficiency is *per se* not a payment of tax for purposes of I.R.C. § 6401. *Goetz v. United States*, 286 F.Supp. 128 (W.D.Mo. 1968). *Accord Becker Bros. v. United States*, 88–1 U.S.T.C. ¶ 9262, 1988 WL 75234 (C.D.Ill.1988). Under *Goetz* and *Becker Bros.*, a timely deficiency assessment is a condition precedent to liability for a deficiency, and any money remitted prior to assessment of a deficiency is merely a deposit.

> It does not follow from the fact that the IRS had the taxpayer's money in hand prior to the running of the statute of limitations that the money was duly collected. In order for the tax liability to have been duly collected it must have been properly assessed and such was not the case here in that the assessment was made at a time subsequent to the running of the statute of limitations.
>
> . . . .
>
> We cannot accept ... that the mailing of [the taxpayers'] check in response to the statutory notice of deficiency amounted to a payment and that therefore, the tax was duly collected.

*Goetz*, 286 F.Supp. at 131.

The Cohens urge us to follow *Goetz*'s so-called *per se* rule, and to hold that the $46,000 May remittance, when received by the IRS, was a deposit and not a payment of tax. According to plaintiffs, the May

remittance became a payment when the IRS applied it against the subsequently assessed deficiencies. Plaintiffs conclude that because the payment was made pursuant to late assessments, it was an overpayment under I.R.C. § 6401(a).

However, the bright-line, *per se* approach of *Goetz* and *Becker Bros.* is not the law in this circuit. Under Court of Claims precedent,

> [t]he question whether [a] remittance is a payment of tax or a mere deposit to stop the running of interest is complicated by the widely differing circumstances which prompt taxpayers to take such action. These surrounding factors are usually determinative on the question whether the remittance is a payment or a deposit.

*Charles Leich & Co. v. United States*, 165 Ct.Cl. 127, 132–33, 329 F.2d 649 (1964). Thus, if a taxpayer "made a voluntary remittance based upon a *bona fide* estimate of tax then due," the remittance would be treated as a payment of tax. 165 Ct.Cl. at 134, 329 F.2d 649. By contrast, if "it is clear that the taxpayer was contesting the proposed liability" and makes a remittance prior to assessment, the remittance should not be treated as a payment. *Id.* at 135, 329 F.2d 649.[8] *Cf. Northern Natural Gas v. United States*, 173 Ct.Cl. 881, 888, 354 F.2d 310 (1965) (where taxpayer conceded liability in a Tax Court petition for certain asserted deficiencies, its remittance in response to a notice of deficiency would be treated as a payment of the asserted deficiencies); *Distasio v. United States*, 22 Cl. Ct. 36, 53 (1990) (remittance made prior to deficiency assessment to stop running of interest was not a payment where the taxpayer had filed written protests regarding proposed deficiencies).

Under the analysis of *Rosenman* and *Charles Leich & Co.*, the May remittance was a deposit and not a payment of tax when it was received by the IRS. The $46,000 remittance was made prior to the

---

**8.** The issue in *Charles Leich & Co.* was whether the taxpayer was entitled to interest on its remittance; a deposit does not earn interest, but a payment which is later determined to be an overpayment does earn interest.

assessment of any deficiency for 1980, and the Cohens disputed their liability for the proposed deficiency.[9] *See Northern Natural Gas,* 173 Ct.Cl. at 886–87, 354 F.2d 310 (*Rosenman* governs the question of when a remittance is considered a payment; there is a payment when the taxpayer makes a voluntary remittance based on a *bona fide* estimate of an *uncontested* tax liability); *Charles Leich & Co.,* 165 Ct.Cl. at 135, 329 F.2d 649 ("We believe that the factors of 'contest,' coupled with the fact of no assessment [at the time of remittance], are sufficient to negate 'payment' ").[10] Further, the May remittance became a payment when the assessments took place; the assessments, as indicated in part IV, took place beyond the period prescribed by statute. *See Rosenman,* 323 U.S. at 658–59, 65 S.Ct. at 536–37 (when IRS holds a deposit, the deposit becomes a payment at the time of a deficiency assessment, that is, when the "tax obligation ... become[s] defined").[11] *Meyersdale Fuel Co.* is thus distinguishable, for the rule announced in that case applies only to remittances which are deemed "payments" of tax made before the expiration of the period of limitations for assessment.

**9.** In their March 7, 1986 protest, the Cohens contested the IRS assertion that the $75,933 deduction was not properly taken. One year later, the Cohens reiterated in their Tax Court petition for 1981 that they disagreed with the proposed disallowance of the $75,933 deduction.

**10.** Defendant argues, based on *Northern Natural Gas,* 173 Ct.Cl. at 887, 354 F.2d 310, that only "disorderly" remittances in which the taxpayer "dumps" funds on the IRS having "no conceivable relationship to ... [the tax] liability" should be treated as deposits. However, in *Rosenman,* the estate's $120,000 remittance could hardly be called disorderly, and in fact it bore a close relationship to the liability ultimately determined ($128,759), yet the Supreme Court still found the estate's remittance to be a deposit.

**11.** *Charles Leich & Co.* announced a rule of consistent treatment of the term "payment" throughout the Internal Revenue Code. 165 Ct. Cl. at 133, 329 F.2d 649 ("what is considered a payment for a specific purpose in the Internal Revenue Code must also be viewed as such in all of the contexts in which the question of 'payment' might arise in the Code"). However, the court implicitly recognized an exception to this consistency rule, namely, that a deposit is

## VI

### A

For the foregoing reasons, plaintiffs' motion filed January 4, 1991 for summary judgment is GRANTED, and defendant's cross-motion filed March 28, 1991 for partial summary judgment is DENIED.

a. Plaintiffs' $46,000 remittance, credited to their account on May 8, 1987, was a deposit when made. Of this sum, $24,749 (designated as interest) became a payment on June 7, 1987 upon assessment of interest by the IRS. The balance of $21,251 (designated as principal) became a payment when assessed by the IRS on August 20, 1987. Both payments were overpayments under I.R.C. § 6401(a) and should be refunded with interest. I.R.C. § 6611.

b. Plaintiffs' $46,727.70 remittance, credited to their account on September 4, 1987, was an overpayment under I.R.C. § 6401(a) and should be refunded with interest. I.R.C. § 6611.

### B

Judgment shall be entered in favor of plaintiffs in the following amounts:

treated as a payment for the limited purpose of stopping the running of interest on an underpayment. *See* 26 C.F.R. § 301.6601–1(a) (interest runs on an underpayment from the time the tax was due until "the date on which *payment* is received") (emphasis added); 165 Ct.Cl. at 132, 329 F.2d 649 (the question "whether the remittance is a payment of tax or a mere deposit to stop the running of interest is complicated ..."). It has long been the IRS practice to stop the running of interest on an underpayment when a deposit is received. *See Shubert v. Commissioner,* 41 T.C. 243, 252 (1963) (relying on, *inter alia, Rosenman* ).

Interest on overpayments under I.R.C. § 6611 does not begin to accrue until payment takes place, and as indicated above a deposit does not become a payment until assessment takes place. In addition, if after receiving a deposit from the taxpayer the IRS never assesses a deficiency, then "payment" would never occur. The deposit could nevertheless be recovered if suit were brought within six years. *See Schenley Import Corp. v. United States,* 129 Ct.Cl. 327, 121 F.Supp. 646 (1954) (action to recover deposit for taxes which never became due was not a tax refund suit; suit was governed by six-year statute of limitations under 28 U.S.C. § 2501).

a. $24,749 plus interest from June 7, 1987 calculated pursuant to 26 U.S.C. § 6621.

b. $21,251 plus interest from August 20, 1987 calculated pursuant to 26 U.S.C. § 6621.

c. $46,727.70 plus interest from September 4, 1987 calculated pursuant to 26 U.S.C. § 6621.

Pursuant to RUSCC 54(d), costs shall be awarded to plaintiffs ("the prevailing party").