**James R. COHEN and Joanne D. Cohen, Plaintiffs–Appellees,**

v.

**The UNITED STATES, Defendant–Appellant.**

No. 92–5013.

United States Court of Appeals, Federal Circuit.

June 4, 1993.

David Parker, Kleinberg, Kaplan, Wolff & Cohen, New York City, argued for plaintiffs-appellees. With him on the brief was Jeffrey S. Bortnick.

Richard Farber, Atty., Dept. of Justice, Washington, DC, argued for defendant-appellant. With him on the brief were Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, and Mary Frances Clark, Attys.

Before LOURIE, Circuit Judge, SMITH, Senior Circuit Judge, and RADER, Circuit Judge.

EDWARD S. SMITH, Senior Circuit Judge.

In this income tax case, the United States appeals the decision of the United States Claims Court[1] granting the Cohens' motion for summary judgment, entered August 6, 1991, as well as that court's order of August 14, 1991, denying the United States' motion for reconsideration. We affirm.

### Issue

Whether the remittance to the IRS made by the Cohens on April 23, 1987, under protest, after a statutory notice of deficiency but before expiration of the period for assess-

---

1. The name of the United States Claims Court was changed to the United States Court of Federal Claims by the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506.

ment, was a "payment" of tax or a mere "deposit" which should be refunded due to untimely assessment.[2]

### Background

The Claims Court found that the remittance made by the Cohens, was a "deposit" rather than a "payment" and that, upon later untimely assessment, the deposit became an overpayment. On cross-motions for summary judgment, the court held that the Cohens were entitled to prevail and ordered the government to refund the overpayment of tax with interest.

### Facts

A comprehensive account of the facts of the case may be found by reference to the opinion of the Claims Court.[3] Following are the facts pertinent to this appeal.

On their 1980 joint federal income tax return, the Cohens claimed a $75,933 deduction from gross income for James Cohen's distributive shares of losses from a limited partnership engaged in trading securities. In December of 1985, pursuant to the Cohens' consent to extend the time period for assessment,[4] the IRS proposed an adjustment to the Cohens' 1980 income tax to disallow the $75,933 deduction. The Cohens filed a formal protest to the proposed adjustments on March 7, 1986. On December 30, 1986, the IRS issued to the Cohens a statutory notice of deficiency ("90–day letter") for tax years 1980 and 1981 in which the $75,933 deduction for partnership losses in 1980 was disallowed, and deficiencies of $42,502 for 1980 and $26,-654 for 1981 were proposed. *Cohen*, 23 Cl. Ct. at 718.

On March 26, 1987, the Cohens filed a petition in the United States Tax Court contesting the proposed deficiency for 1981.[5] Thereafter, James Cohen remitted a check for $46,000 to the IRS on April 23, 1987, in response to the 90–day letter dated December 30, 1986.[6] The IRS posted the $46,000 remittance to the Cohens' account as an "Advance Payment" on May 8, 1987. *Id.* at 719. The statute of limitations for assessment of deficiencies for the Cohens' 1980 joint income tax return expired May 29, 1987.[7] On June 7, 1987, the IRS assessed $51,628.70 in interest on unpaid tax for 1980. On August 20, 1987, the IRS assessed against the Cohens a $42,502 tax deficiency for 1980. *Id.* at 720.

On March 28, 1989, the Cohens filed a claim for refund with the IRS in connection with their 1980 tax liability. *Id.* Six months elapsed without action by the IRS on the claim for refund and the Cohens took their claim to the United States Claims Court,

---

2. This is the only issue decided below which has been argued on appeal. *But see Shore v. United States*, 26 Cl.Ct. 829, 838 (1992).

3. *Cohen v. United States*, 23 Cl.Ct. 717 (1991).

4. "In June 1984, the Cohens and an IRS official executed IRS form 872–A, 'Special Consent to Extend the Time to Assess Tax.' The form provided in relevant part:

James R. Cohen and Joanne D. Cohen ... and the District Director of Internal Revenue consent and agree as follows: (1) The amount(s) of any Federal income tax due on any return(s) made by or for the above taxpayer(s) for the period(s) ended December 31, 1980 may be assessed on or before the 90th (ninetieth) day after: (a) the [IRS] office considering the case receives Form 872–T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the [IRS] mails Form 872–T to the taxpayer(s); or (c) the [IRS] mails a notice of deficiency for such period(s); except that if a notice of deficiency is sent to the taxpayer(s), the time for assessing the tax for the period(s) stated in the notice of deficiency will end 60 days after the period

during which the making of an assessment was prohibited."
*Cohen*, 23 Cl.Ct. at 718.

5. "Paragraph 5t. of their petition stated:

The Petitioners intend to pay the alleged deficiency for 1980 in the annexed notice of deficiency. The Petitioners intend to file a claim for a refund of the paid 1980 deficiency (and if the claim for refund is denied, litigate the issues therein in the United States [Claims Court])."
*Id.* at 719.

6. James Cohen accompanied the $46,000 check to the IRS with a letter which provided in part:

The check is in partial payment of the proposed deficiency for the year ended December 31, 1980 in the sum of $21,251 for the 1980 tax deficiency and interest thereon of $24,749.

7. May 29, 1987 was "60 days after the expiration of the 90–day period commencing December 30, 1986 (the date of the notice of deficiency)." *Cohen*, 23 Cl.Ct. at 720.

contending that the $46,000, remitted to the IRS prior to the expiration of the period for assessment of deficiencies in their 1980 income tax, should be refunded because the assessments when made by the IRS were untimely. The Claims Court agreed and the government appeals.

### Standard of Review

The level of acceptance by appellate courts of determinations of fact by a trial tribunal is extremely high, and in cases involving dispositive motions neither court has much choice other than to determine *whether* a question of fact exists. Appellate courts must approach determinations of trial courts with all due respect. In the case of conclusions of law, however, the parties are entitled to a complete and independent appellate review.[8] The question of the propriety of summary judgment itself is subject to complete and independent review by the Federal Circuit.[9]

### Deposit or Payment?

The outcome of this case turns on whether the Cohens' remittance to the IRS of April 23, 1987, constituted a payment or a deposit.[10] If a payment, as the government argues, the government is entitled to retain the remittance in partial satisfaction of the proposed deficiencies for 1980. Alternatively, if the remittance was a deposit, a payment did not occur until the formal assessments of June and August of 1987; because those assessments were untimely, the remittance became an overpayment pursuant to I.R.C. § 6401(a),[11] and the Cohens are entitled to a refund pursuant to I.R.C. § 6402(a).[12]

The term "overpayment" is defined by I.R.C. § 6401(a) as "that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto." The United States Claims Court aptly explained the period of limitation relevant to this case:

> As a general matter, "the amount of any [internal revenue] tax ... [must] be assessed within 3 years after the return was filed." [13] According to the Cohens' 1980 Certificate of Assessments and Payments, the Cohens filed their 1980 return on September 15, 1981. Thus, absent the June 1984 special consent to extend the time to assess tax, the IRS would have been required to assess any deficiency against the Cohens for 1980 by September 15, 1984. However, the Cohens and the IRS agreed that the IRS could assess a deficiency against the Cohens arising out of claimed 1980 limited partnership losses during the 60–day period commencing 90 days from the mailing of a notice of deficiency. The IRS mailed a notice of deficiency on December 30, 1986, so notwithstanding the provisions of section 6401(a), the IRS could have assessed a deficiency against the Cohens for 1980 between March 30, 1987 and May 29, 1987. According to the [government], the IRS assessed two separate amounts against the Cohens for 1980, $51,-628.70 on June 7, 1987 and $45,502 on August 20, 1987. The two assessments were therefore untimely....

*Cohen*, 23 Cl.Ct. at 721.

The Claims Court based its decision on the holdings of *Rosenman v. United States*, 323

---

8. *See In re Sure–Snap Corp.*, 983 F.2d 1015, 1017 (11th Cir.1993) (district court's conclusion of law subject to complete and independent review).

9. *National Cable Television Ass'n v. American Cinema Editors, Inc.*, 937 F.2d 1572, 1576 (Fed. Cir.1991) ("Summary judgment is appropriate where the movant has established that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. [citations omitted] On appeal, this court reviews the question of the propriety of summary judgment *de novo*.").

10. *See* 15 Jacob Mertens, Jr., The Law of Federal Income Taxation §§ 58.57, 58.104 (Martin M. Weinstein & Randall J. Gingiss eds., 1992); Mar-

vin J. Garbis & Robert L. Frome, Procedures in Federal Tax Controversies 10.27 (1968); Joseph P. Giljum, *Federal Tax Problems Encountered in Advance Tax Payment Transactions*, 21 Tax L.Rev. 495 (1966).

11. All citations to I.R.C. are to the provisions of the Internal Revenue Code of 1986, 26 U.S.C. (1988 ed.).

12. Section 6402(a) provides:

In the case of any overpayment, the Secretary ... shall ... refund any balance.

13. The Claims Court quoted from I.R.C. § 6501(a).

U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), and *Charles Leich & Co. v. United States*, 329 F.2d 649, 165 Ct.Cl. 127 (1964), which make a distinction between a "payment of tax" and a mere deposit.

The specific issue addressed by the United States Supreme Court in *Rosenman* was whether a claim for refund of federal estate tax was time-barred. *Rosenman*, 323 U.S. at 659, 65 S.Ct. at 537. Louis Rosenman died on December 25, 1933. The Commissioner of Internal Revenue extended the time for filing the federal estate tax return to February 25, 1935; however, the Commissioner did not allow an extension for payment of the estate tax, which was due one year from the date of Rosenman's death. On December 24, 1934, the executors remitted a check for $120,000 to the IRS. The check was accompanied by a letter, which stated:

> "We are delivering to you herewith, by messenger, an Estate check payable to your order, for $120,000, as a payment on account of the Federal Estate tax.... This payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due."

*Id.* at 659–60, 65 S.Ct. at 537. The Collector placed the remittance in a suspense account for money received from taxpayers in cases where the IRS had not made a formal assessment.

On February 25, 1935, the executors filed the estate tax return, which reflected a total estate tax due of $80,224.24. On March 28, 1935, the Collector applied $80,224.24 of the $120,000 in the suspense account towards satisfaction of the estate tax. On March 26, 1938, the executors filed a claim for refund of the balance in the suspense account, $39,-775.76. *Id.* at 660, 65 S.Ct. at 537.

In April of 1938, the Commissioner completed an audit of the estate tax return and assessed a deficiency of $48,534.84. The Collector then applied the balance of the suspense account, $39,775.76, in partial satisfaction of the assessed deficiency. On April 22, 1938, the executors remitted an additional $10,497.34, which satisfied the balance of the

deficiency, plus interest. The Commissioner rejected the executors' claim for refund. *Id.*

On May 20, 1940, the executors filed a second refund claim for $24,717.12, based on additional deductions. The Commissioner rejected the claim as time-barred by the three-year statute of limitations, except for the $10,497.34 remitted in 1938. The Commissioner based his rejection on the position that the executors' remittance of December 24, 1934, was a payment of tax. The Court of Claims agreed with the Commissioner and barred recovery. *Id.* at 661–62, 65 S.Ct. at 537–38.

The Supreme Court reversed the finding of the Court of Claims that the remittance was a payment and held that the remittance was a deposit. The Court explained: "[O]n December 24, 1934, the taxpayer did not discharge what he deemed a liability nor pay one that was asserted. There was merely an interim arrangement to cover whatever contingencies the future might define. The tax obligation did not become defined until April 1938 [the time of the assessment]." *Id.* at 662, 65 S.Ct. at 538. The deposit did not become a payment until assessment of tax by the IRS in April of 1938. Therefore, the executors' claim for refund filed on May 20, 1940, was not time-barred.

In *Charles Leich & Co.*, the Court of Claims dismissed a taxpayer's claim for statutory interest and held that the remittances made by the taxpayer to the IRS were not payments, but deposits. The court rejected the position that assessment is a prerequisite for "payment." *Charles Leich & Co.*, 329 F.2d at 652. Instead, the court examined the particular facts and circumstances of the case in reaching its conclusion. The court explained:

> The question whether the remittance is a payment of tax or a mere deposit to stop the running of interest is complicated by the widely differing circumstances which prompt taxpayers to take such action. These surrounding factors are usually determinative of the question whether the remittance is a payment or a deposit.

*Id.* The court found that "the factors of 'contest,' coupled with the fact of no assess-

ment, are sufficient to negate 'payment.'" *Id.* at 653.

The trial court here correctly rejected recognition of a per se rule and based its decision on the rationale of *Rosenman* and *Charles Leich & Co.*[14] "[T]he ... remittance was a deposit and not a payment of tax when it was received by the IRS." *Cohen,* 23. Cl.Ct. at 724. The Cohens remitted the $46,-000 to the IRS under protest. The Cohens filed a formal protest against the proposed deficiencies on March 7, 1986. On March 26, 1987, just one month prior to the remittance at issue, the Cohens again expressed their intent to contest the proposed 1980 deficiencies at the time they filed their petition in The United States Tax Court concerning the proposed deficiency for 1981. The IRS failed to make assessment of any income tax deficiency against the Cohens for the 1980 taxable year until after the limitations period had expired. The fact that the Cohens at all times disputed additional tax liability for 1980, coupled with the failure of the IRS to make a timely assessment of deficiency negates payment here, as was the case in *Charles Leich & Co.*

Taxation, perhaps more so than all other relationships between government and the governed, operates within a belief on both sides that the rules should be clear and uniformly applied, that each party should abide by the rules, and that each should accept the consequences of its choice of action under those rules. It is rare that tax law bears any recognizable relationship to common sense, but this rule does. It is one in which considerations are almost exclusively for the disputing parties rather than for any particular desires of courts, counsel or other representatives.

The facts of this case reveal clear and knowledgeable use of established procedures by both sides. These facts do not disclose a history of playing close cards or attempts by either party to take advantage of deliberately ambiguous actions. Taxpayers adopted a clear position at every stage, and acted consistently. "We protest and we contest." The government was equally as positive and forthright in its message that it intended to make a legal assessment of the tax unless convinced in classically familiar levels of administrative procedure that the tax was not owing.

Neither party changed its mind and no one was misled. For some reason the assessment was not made within the clear boundaries of time imposed by law or openly agreed to by the parties. The consequences are that the transfer of funds was a deposit as a matter of law, whether for purposes of refund, imposition of interest, or otherwise. Similarly, the assessment was invalid as a matter of law, whether for purposes of creating an obligation, or otherwise. Although we are by no means describing any "game," the chips must lie where they have fallen.

### Conclusion

The remittance made by the Cohens, under protest, after a notice of deficiency but in clear circumstances of contest prior to expiration of the period for assessment, was a deposit as a matter of law. The decision of the United States Claims Court granting summary judgment in favor of the Cohens and denying the United States' motion for reconsideration is **affirmed.**

 ***AFFIRMED.***

---

14. The United States Court of Appeals for the Federal Circuit adopted as precedent all decisions of the Court of Claims entered before 30 September 1982 in *South Corp. v. United States,* 690 F.2d 1368, 1379 (Fed.Cir.1982).