108 F.3d 1393
 79 A.F.T.R.2d 97-1341, 97-1 USTC P 60,260
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Deborah ARRINGTON, Independent Administratrix of the Estate
of William Arrington, Deceased, Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee.
 96-5079
 United States Court of Appeals, Federal Circuit.
 March 7, 1997.
 
 Before ARCHER, Chief Judge, SMITH, Senior Circuit Judge, and NEWMAN, Circuit Judge.
 Decision
 SMITH, Senior Circuit Judge.
 
 
 1
 Deborah Arrington, as administratrix of her son William Arrington's estate, appeals a grant of summary judgment by the United States Court of Federal Claims in favor of the United States, denying her claim for an estate tax refund and granting the United States' counterclaim for taxes owed. Because we agree with the Court of Federal Claims that the date-of-death value of money in trust and payable from an annuity was properly includable in the gross estate and that appellant did not meet her burden of accounting for the allocation of the lump-sum cash payment, the judgment of the Court of Federal Claims is affirmed.
 
 Background
 
 2
 William Arrington ("decedent") was born on July 21, 1984 in Stephenville, Texas. Decedent was severely injured at birth as a result of negligence on the part of the hospital and staff and died on May 25, 1992, at the age of seven. Prior to decedent's death, his parents, Wilford and Deborah Arrington, in their individual capacities and on behalf of decedent, sued the hospital where decedent was born and the attending physicians, alleging negligence and gross negligence that resulted in decedent's injuries.
 
 
 3
 Prior to trial, the Arringtons entered into a settlement agreement ("First Settlement Agreement") with all but one of the defendants. The agreement provided for $505,000 for attorney fees and $135,000 payable "to the Clerk of the District Court of Tarrant County for the use and benefit of WILLIAM ARRINGTON." No amount of this lump-sum payment was included in the gross estate of decedent for estate tax purposes.
 
 
 4
 The First Settlement Agreement also provided for an annuity payment of $2,027.86 per month "to WILFORD and DEBORAH ARRINGTON, as parents and Next Friends of WILLIAM ARRINGTON, for the sole use and benefit of WILLIAM ARRINGTON." The annuity payments were to last for the remainder of decedent's life, with a guaranteed minimum duration of 360 months. The First Settlement Agreement listed "the Estate of William Arrington" as the contingent payee. The obligation to pay the annuity was assigned to Jamestown Life Insurance Company, which funded the obligation to make the monthly payments by purchasing an annuity contract. The date-of-death value of the annuity payments was reported on decedent's federal tax return as $264,838.
 
 
 5
 The claims against the hospital, the sole remaining defendant, proceeded to trial on June 3, 1991, where the jury rendered a verdict of $5,940,000 for the plaintiffs The jury found the hospital 45% negligent, resulting in a judgment of $2,673,000 against the hospital. The defendant filed a motion for a new trial, but ultimately settled with the Arringtons in the Second Settlement Agreement.
 
 
 6
 The Second Settlement Agreement provided for an award of $150,000 to decedent's parents, $1,187,657.81 for attorney fees, and $850,000 to be deposited into the registry of the state court for use and benefit of decedent, to remain on deposit until further order of the court. On April 6, 1992, the court ordered that a trust be created for the benefit of decedent ("William Arrington Trust," or "trust") and funded with the $850,000 that had been deposited into the registry of the state court. The trust instrument provided that the money be held and distributed for the benefit of William Arrington "as the Trustee in its sole discretion deems necessary and appropriate to provide for his health, education, maintenance and support[.]" Moreover, the trust was to terminate when decedent turned 25 or at the time of his death, and the court had the sole power to amend, modify or revoke the trust.
 
 
 7
 In the federal estate tax return filed after decedent's death, the estate treated both the corpus and interest in the trust, valued at $872,015, and the remaining annuity payments, valued at $264,838, as included in the gross estate. The return did not include any portion of the $135,000 cash payment that was part of the First Settlement Agreement in the gross estate.
 
 
 8
 After paying the estate taxes, the estate filed a claim with IRS for refund of the entire amount paid, and, later, this refund suit. IRS filed a counterclaim for an estate tax deficiency assessed against the Arringtons due to the failure of the estate to include the $135,000 in the gross estate. The Arringtons claimed that the $135,000 had been spent in 1989 on, among other things, a house and a van, for the benefit of their son.
 
 
 9
 Both parties moved for summary judgment. The Court of Federal Claims granted the government's motion, finding that: (1) the trust was a vested interest of decedent's and includable under Section 2033 of the Internal Revenue Code; (2) that decedent was the sole beneficiary of the annuity and that the annuity was properly included in the gross estate; and (3) that the Arringtons failed to prove that the $135,000, in which decedent held the sole interest, had been consumed for the benefit of decedent. The court allowed the Arringtons an opportunity to settle with IRS on an amount of the $135,000 that should be included in the gross estate, but the parties were unable to agree on an amount. Therefore, the court entered a deficiency judgment against the estate in the amount of $55,367.24, plus interest. This appeal followed.
 
 Jurisdiction and Standard of Review
 
 10
 This court has exclusive jurisdiction over an appeal from a final decision of the Court of Federal Claims pursuant to 28 U.S.C. § 1295(a)(3). This court exercises complete and independent review of a grant of summary judgment, affirming when there is no remaining issue of material fact and the movant is entitled to judgment as a matter of law. See Cohen v. United States, 995 F.2d 205, 207 (Fed.Cir.1993); Intellicall, Inc. v. Phonometrics, Inc., 952 F.2d 1384, 1387, 21 USPQ2d 1383, 1386 (Fed.Cir.1992).
 
 The William Arrington Trust
 
 11
 Appellant challenges the Court of Federal Claims' ruling that the date-of-death value of the William Arrington Trust is includable in decedent's gross estate. Whether this amount is properly includable hinges on the determination whether the amount was beneficially owned by decedent prior to his death.[1] To determine if the sums were beneficially owned by decedent, the court must look to Texas state law. See Morgan v. Commissioner, 309 U.S. 78, 80, 60 S.Ct. 424, 426, 84 L. Ed 1035(1939). Appellant first contends that decedent's interest in the trust was merely contingent because the trustee retained control over the assets and was authorized to distribute the funds for decedent's health, education, maintenance, and support until decedent reached twenty-five years of age. Here, decedent enjoyed the sole beneficial interest in the trust assets during his life and the undistributed income and principal were required to be distributed to his estate upon his death. The trustee had the discretion only as to the timing and reasonableness of the distributions to be made for decedent's support. We agree with the Court of Federal Claims that the trust instrument and Chapter 142 of the Texas Property Code provide that decedent was the sole beneficial owner of the trust assets.
 
 
 12
 Appellant also argues that decedent held only a defeasible interest in the trust assets because the court retained the power to amend, modify, or revoke the trust. This argument is likewise without merit. Although the court had the ability to revoke the trust before decedent reached 25, if the court had affected such a revocation, the principal of the trust would be distributed to William Arrington in fee simple. The court did not have the power to revoke the trust to the detriment of decedent.
 
 
 13
 Appellant raises the novel argument that Mr. and Mrs. Arrington did not take the trust assets as heirs of decedent's estate, but as the beneficiaries of a resulting trust. They point to the judgment of the trial court in the malpractice suit, ostensibly showing that the funds allocated to the trust were allocated to decedent's parents. Appellant's argument is misleading, however, in representing that the funds in trust originated from the jury verdict, when in fact the funds in trust came from the Second Settlement Agreement that superseded the jury verdict. The breakdown of damages by the jury, therefore, is inconsequential, as the money in the Trust came entirely from the Second Settlement Agreement, and was put in trust for the benefit of decedent.
 
 
 14
 We agree with the Court of Federal Claims that decedent had sole beneficial ownership of the trust assets at the time of his death and, as such, the date-of-death value of the trust was properly included in decedent's gross estate. Because we agree with the Court of Federal Claims that Texas law provides that decedent was the sole beneficial owner of the trust assets, we decline to certify the issue to the Texas Supreme Court.
 
 Annuity Payments
 
 15
 Appellant argues that the annuity provision in the First Settlement Agreement should not be included in decedent's gross estate, claiming that payments not received by decedent could not be considered beneficially owned by him.
 
 
 16
 Appellant contends that Jamestown Life Insurance Company ("Jamestown") is the true owner of the funds because their name appears as such on the annuity contract. This argument is flawed because the annuity contract is not the document that entitled decedent and, alternatively, his estate, to the annuity payments--it is the First Settlement Agreement. The annuity contract was merely Jamestown's method of funding the agreed-upon payments. The payments were earmarked for the exclusive benefit of decedent, and payments after death were to revert to the estate. As such, these sums were beneficially owned by decedent. Therefore, we agree with the Court of Federal Claims that the date-of-death value of the remainder of the monthly disbursements is properly includable in decedent's gross estate.
 
 The Lump-Sum Payment
 
 17
 Appellant contends that the lump-sum payment of $135,000 from the First Settlement Agreement is not properly includable in decedent's gross estate. Appellant asserts that (1) decedent did not enjoy beneficial ownership of the funds because they were paid to the Arringtons in their individual capacities, and (2) even if decedent were considered as the owner of the funds, the $135,000 lump-sum payment was spent for the benefit of decedent on, among other things, a house and a van.
 
 
 18
 Appellant is incorrect in her assertion that the money was not beneficially owned by decedent. The money was not given to the Arringtons in their individual capacities to dispose of any way they saw fit. It was earmarked for deposit with the state court and distributed to the Arringtons to spend for the benefit of decedent. Decedent, therefore, held the sole beneficial interest in the lump-sum payment.
 
 
 19
 It is well established that a tax assessment is presumptively correct and that the taxpayer bears the burden of persuasion, or what Wigmore termed the risk of nonpersuasion,[2] that the Commissioner's assessment is erroneous. See Welch v. Helvering, 290 U.S. 111, 115 (1933). Even as in this case, when the government brings a counterclaim for additional taxes, based on a deficiency that has been assessed, the taxpayer bears the burden of proof with respect to the issues raised by the counterclaim. See 26 U.S.C. § 7422(e).
 
 
 20
 Appellant did not acquit her burden of proving that these funds had been exhausted, or that the items purchased with these funds were not beneficially owned by decedent at the time of his death. Although plaintiff alleged in her answer to the government's counterclaim that the funds were exhausted, the Court of Federal Claims found that she "failed to produce any evidence that the $135,000.00 was not paid for the use and benefit of William Arrington, or that all of the $135,000.00 did not remain in decedent's estate at the time of his death. Nonetheless, the Court of Federal Claims granted appellant additional time to come to an agreement with the government as to a suitable amount to be included in decedent's gross estate.
 
 
 21
 Ms. Arrington argues that the government has produced no evidence to support the underlying basis of the assessment that this money was not expended for the benefit of decedent.[3] Appellant has misconstrued the burden of proof. It is appellant's burden to prove that the money had been spent for decedent's benefit, not the government's burden to prove that the money had not been expended. The government does not have to put forth any evidence to show the propriety of a deficiency until the taxpayer has overcome the presumption of correctness by proving the assessment to be erroneous. See Helvering v. Taylor, 293 U.S. 507, 515, 55 S.Ct. 287, 291, 79 L.Ed. 623 (1935). Appellant did not acquit her burden of persuasion that the assessment was erroneous or arbitrary, and, as such, has not overcome the presumption of correctness.
 
 Conclusion
 
 22
 Because decedent was the sole beneficial owner of the trust and the annuity, the date-of-death value of the William Arrington Trust and the remaining monthly payments are properly includable in decedent's gross estate. Moreover, appellant failed to acquit her burden of proof to rebut the IRS agent's assessment of estate taxes on the $135,000 lump-sum payment, and therefore, this sum was properly includable in decedent's gross estate. For these reasons, the decision of the Court of Federal Claims granting IRS's motion for summary judgment and imposing a deficiency judgment of $55,367.24, plus interest, is affirmed.
 
 
 
 [1]
 Internal Revenue Code § 2033 provides that "[t]he gross estate shall include the value of all property to the extent of the interest therein of decedent at the time of his death." 26 U.S.C. § 2033. The Treasury Regulations define the extent of decedent's interest as the "value of all property, whether real or personal, tangible or intangible, and wherever situated, beneficially owned by decedent at the time of his death." 26 C.F.R. § 20.2033-1(a)
 
 
 [2]
 9 John H. Wigmore, Evidence § 2485 (Chadbourn rev.1981)
 
 
 [3]
 Appellant argues that "no affidavit was ever filed by the government to refute either the Arringtons' assertion that these funds reflected part of the award made to them individually, or, most importantly, their assertion that the funds have been expended."