KENNETH H. JOHNSON AND YOSHIKO JOHNSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 13367-90
United States Tax Court
T.C. Memo 1993-562; 1993 Tax Ct. Memo LEXIS 572; 66 T.C.M. (CCH) 1446; November 29, 1993, Filed *572 An order denying petitioner's motion for leave to amend their petition will be issued. For petitioners: Donald D. DeGrasse. For respondent: Sheila Dansby Harvey. BEGHE
BEGHE
MEMORANDUM OPINION BEGHE, Judge: Respondent determined a deficiency in petitioners' Federal income tax and additions to tax for 1983 as follows: Additions to Tax Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1983
$ 30,139
$ 1,507
[1]
$ 7,535
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1983, and all Rule references are to the Tax Court Rules of Practice and Procedure. When petitioners filed their petition, they were residents of Missouri City, Texas. This matter is before us on petitioners' motion for leave to amend their petition to assert that they are entitled to a $ 13,500 refund of Federal income tax. Respondent has objected. The underlying issue is whether a $ 30,000 remittance petitioners made to respondent as a deposit became a payment of tax for 1983 that we could order respondent to refund as an overpayment under section 6512(b). We hold *573 that we lack jurisdiction to order the $ 13,500 refund requested by petitioners. We will therefore deny petitioners' motion for leave to amend. Background
In 1984, respondent commenced an audit of petitioners' Federal income tax returns for the taxable years 1981, 1982, and 1983. On January 9, 1985, petitioners deposited $ 30,000 with respondent in order to suspend the running of interest on any deficiency that might be determined for those years, stating "The amount is arbitrary since you have failed to make any preliminary finding known to me." On January 30, 1985, respondent acknowledged receipt of the deposit and notified petitioners that the deposit had been divided equally among the 3 years, $ 10,000 each to 1981, 1982, and 1983. Petitioners wrote back, asking that the deposit be applied "jointly" to the 3 years under audit, or, apparently in the alternative, to apply $ 13,500 to each of the years 1981 and 1982, and $ 3,000 to 1983. Petitioners never described what they meant by the term "jointly". However, they now argue that they wanted the entire $ 30,000 to be applied in such a manner that, if respondent should determine a deficiency for any of the 3 years, their *574 account for that year would reflect the $ 30,000 deposit. On February 27, 1985, respondent sent petitioners a letter stating that the deposit had been applied "as you requested", but did not specifically state how the deposit had been applied. On March 26, 1990, respondent mailed petitioners a statutory notice that determined a $ 30,139 income tax deficiency (plus additions to tax) for the taxable year 1983. Respondent did not and has not issued a statutory notice to petitioners for 1981 or 1982. On June 20, 1990, petitioners petitioned the Tax Court, seeking, among other relief, the refund, as an overpayment plus interest, of the $ 30,000 previously remitted. On August 13, 1990, respondent refunded petitioners $ 13,500 of the $ 30,000 remittance, the amount applied to 1981, plus $ 9,942.34 in interest. In so doing, respondent treated this part of the remittance as a payment of tax with respect to the year 1981. [1]
*575 On September 9, 1991, petitioners filed a claim for refund of the $ 13,500 apparently applied to 1982. On December 6, 1991, respondent denied this claim, on the ground that the statutory period of limitations for 1982 refunds had expired. Respondent's stated reason for denying petitioners' claim is consistent with respondent's having treated this part of the remittance as a payment of tax rather than as part of a deposit for the year 1982. In summer 1991, petitioners and the IRS Appeals Office reached a settlement that there was no deficiency in petitioners' 1983 income tax. As a result of that agreement, the parties entered into a stipulation that petitioners had no deficiency, overpayment, or addition to tax for 1983, which the Court entered as its decision on September 6, 1991. After entry of decision, counsel for both parties agreed that petitioners had made a $ 3,000 deposit for 1983. On September 19, 1991, petitioners filed an uncontested Motion to Vacate Judgment in order to preserve their rights to receive the $ 3,000 of the remittance that had been applied to 1983. On September 23, 1991, the Court granted petitioners' motion, and the case was set for trial for March *576 23, 1992. Prior to trial, petitioners attempted to settle the case with respondent and to enter into a stipulated decision that they had no deficiencies or additions to tax but were entitled to a $ 3,000 refund. While the case was pending before this Court, petitioners' representative persuaded the Internal Revenue Service Center in Austin, Texas, to return the $ 3,000 applied to 1983. On December 23, 1991, respondent refunded petitioners $ 3,000, plus $ 2,927.82 in interest, also treating this portion of the remittance as a payment of tax rather than a deposit. [2] Petitioners did not at that time inform respondent's counsel they had received this refund. *577 At the call of the calendar on March 23, 1992, petitioners informed respondent that they no longer wished to settle for a $ 3,000 overpayment for 1983 because that amount had been already refunded. However, petitioners asserted that they were entitled to a refund of the remaining $ 13,500 allocated by respondent to 1982, plus interest, on the ground that their original $ 30,000 remittance should have been applied "jointly" to the 3 years under audit. Petitioners asserted that respondent had mistakenly applied only $ 3,000 of their remittance to their account for 1983. On April 22, 1992, the Court filed petitioners' Motion for Leave to File Amended Petition, and the parties' stipulation of facts, petitioners' supporting memorandum, and respondent's objection and memorandum followed in due course. Petitioners' motion states that they "seek to amend their Petition to claim only the balance of [the $ 3,000] overpayment in the amount of $ 13,500 plus interest." On reflection, it is not clear why petitioners need to amend their petition to include a claim for refund of $ 13,500 plus interest. In their original petition, petitioners claimed they were due a $ 30,000 refund plus interest. *578 The amended petition would do no more than reduce the amount of the overpayment and refund originally claimed in their petition. Nonetheless, the underlying issue we decide on this motion, whether we can order respondent to refund petitioners an overpayment of $ 13,500 or some lesser amount, plus interest, bears on whether we could grant petitioners the relief they would seek in their amended petition, as well as our authority to grant any part of the relief sought in their original petition. Petitioners argue in their memorandum that their $ 30,000 remittance was a deposit, but that it became a payment of tax for 1983 when respondent issued the notice of deficiency for 1983, the only year for which respondent issued a notice of deficiency. Respondent has objected to petitioners' motion for leave to amend and now contends that the $ 30,000 remittance was originally a deposit, remained a deposit, and never became a payment of tax for any of the years under audit. Respondent accordingly argues that the Court has no jurisdiction to order a refund of the $ 13,500 because, as a deposit, it is not subject to our overpayment jurisdiction under section 6512(b). Respondent argues in *579 the alternative that if the $ 13,500 has ever become a payment, it was a payment for 1982, a taxable year over which we have no jurisdiction. Nonetheless, respondent is prepared to refund petitioners $ 629.84, which is the remaining part of the $ 30,000 that respondent has not refunded, after taking into account the $ 12,870.16 in interest petitioners received, but which respondent now argues they were not entitled to, on the ground that the remittance never became a payment. [3] For the reasons discussed below we will deny petitioners' motion for leave to amend their petition. Discussion
Both sides in this matter have been guilty of inconsistencies and shifts *580 of position. All administrative action by respondent has been consistent with the view that petitioners' remittance was or became a payment or series of payments of tax. Respondent now argues that the remittance has always been and continues to be a deposit over which this Court has no jurisdiction to order a refund. Petitioners' initial position was never clear, and they have backed and filled and made a series of tacking maneuvers in a belated effort to recover the entire $ 30,000 as an overpayment on which they are entitled to interest. Petitioners and respondent agreed that there was no overpayment or deficiency with respect to 1983, but the decision to that effect has been vacated, apparently to give petitioners the opportunity to recover $ 3,000 of the remittance. That having been accomplished, petitioners now seek a much greater amount, the $ 13,500, which respondent appears to acknowledge their right to do, without holding them to their prior agreement. We will therefore address the parties' arguments as they have presented them on this motion. Issue 1. Jurisdiction To Order Refund
Rule 41(a) provides, in part, that A party may amend a pleading once as *581 a matter of course at any time before a responsive pleading is served. * * * Otherwise a party may amend a pleading only by leave of Court or by written consent of the adverse party, and leave shall be given freely when justice so requires. No amendment shall be allowed after expiration of the time for filing the petition, however, which would involve conferring jurisdiction on the Court over a matter which otherwise would not come within its jurisdiction under the petition as then on file. * * *
After the time has expired to amend a pleading as a matter of course, the Court has discretion to grant leave to amend. Kramer v. Commissioner, 89 T.C. 1081, 1085 (1987) (citing Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 330 (1971) (discussing Fed. R. Civ. P. 15(a))). The factors we consider in deciding whether to grant leave to amend a pleading include prejudice to the adverse party, undue delay, and bad faith. Id. In addition, we will not grant a motion for leave to amend a pleading if we would lack jurisdiction over the newly asserted matter. See Rule 41(a). Section 6512(b) provides as follows concerning *582 the Tax Court's jurisdiction to order respondent to refund an overpayment of tax: if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, * * * in respect of which the Secretary determined the deficiency, or finds that there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.
The term "overpayment" is not statutorily defined. Estate of Baumgardner v. Commissioner, 85 T.C. 445, 448 (1985). In Jones v. Liberty Glass Co., 332 U.S. 524, 531 (1947), the Supreme Court defined an "overpayment", as used in the statutory predecessor of section 6512(b), sec. 322(d), I.R.C. 1939, as "any payment in excess of that which is properly due." In Estate of Baumgardner v. Commissioner, supra at 450, we applied this definition to the "overpayment" as used in section 6512(b). Interpreting *583 the term "overpayment" as used in section 6511(a), the Supreme Court in United States v. Dalm, 494 U.S. 596, 609 n.6 (1990), said that "The commonsense interpretation is that a tax is overpaid when a taxpayer pays more than is owed, for whatever reason or no reason at all." Thus, an income tax overpayment is the amount by which the taxpayer's payments of tax exceed the correct amount of tax imposed by subtitle A. It follows that in order for there to be an overpayment, the taxpayer must first make payment. In Risman v. Commissioner, 100 T.C. 191, 197 (1993), we said that A remittance by a taxpayer to respondent generally will not be regarded as a payment of Federal income tax until the taxpayer intends that the remittance satisfy what the taxpayer regards as an existing tax liability. See Rosenman v. United States, 323 U.S. 658, 661-662 (1945); Ewing v. United States, * * * [914 F.2d 499, 503-504 (4th Cir. 1990)]; Fortugno v. Commissioner, 353 F.2d 429, 435 (3d Cir. 1965), affg. 41 T.C. 316, 322 (1963); *584 see also Perkins v. Commissioner, 92 T.C. 749, 754-759 (1989). Until such time and absent such intent, a remittance by a taxpayer to respondent generally will be regarded, not as a payment of tax, but merely as a deposit in the nature of a cash bond with respect to a tax liability that is to be determined at a later point in time.
In Risman v. Commissioner, supra at 196 n.2, we observed that courts have different views, for purposes of various Code provisions, of the proper test for determining whether taxpayers' remittances to the IRS are deposits or payments. For discussions of the differences, see Ewing v. United States, 914 F.2d 499, 504-504 (4th Cir. 1990); Fortugno v. Commissioner, 353 F.2d 429, 434-435 (3d Cir. 1965), affg. 41 T.C. 316 (1963); Wiltgen v. United States, 71 AFTR 2d 93-691, at 93-695, 93-1 USTC par. 50,044, at 87,169 (N.D. Iowa 1992). See also Saltzman, IRS Practice and Procedure, par. 11.05 [1][b], at 11-33 to 11-36 (2d ed. 1991), par. 11.14 (1993 Cum. *585 Supp. No. 2). If we were to apply our approach in Risman v. Commissioner, supra at 197-198, see also Wood v. United States, 808 F.2d 411, 416 (5th Cir. 1987), in which we try to determine the taxpayer's intent, in light of all the facts and circumstances, to treat a remittance as a payment or as a deposit, we would be hard put to determine petitioners' intent from the written record. Petitioners' primary request or designation, that the $ 30,000 remittance be applied "jointly", was ambiguous at best; it would be quite a stretch to conclude that petitioners expressed the intent that the $ 30,000 be held in suspense until respondent should determine a deficiency for a particular year, and then to apply the remittance as a payment with respect to that year. Giving effect to their "alternative" designation, that just $ 3,000 be applied to the year 1983, there would be nothing left to which our jurisdiction would attach, inasmuch as that amount has already been returned or refunded to them. Be that as it may, we are bound, under the rule in Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), *586 affd. 445 F.2d 985 (10th Cir. 1971), to follow the per se rule, announced by the Court of Appeals for the Fifth Circuit, to which this case will be appealable, in Thomas v. Mercantile Natl. Bank, 204 F.2d 943 (5th Cir. 1953), that an amount remitted as a deposit in the nature of a cash bond to stop the accrual of interest is not a payment of tax and does not become a payment until assessment. See Nesmith v. Commissioner, T.C. Memo. 1981-561, revd. and remanded on other grounds 699 F.2d 712 (5th Cir. 1983). But cf. Ford v. United States, 618 F.2d 357, 360-361 (5th Cir. 1980) (expressing dissatisfaction with the per se rule of Thomas v. Mercantile Natl. Bank, supra), rehg. denied 625 F.2d 1016 (5th Cir. 1980). Because respondent has not assessed any tax with respect to which petitioners' $ 30,000 remittance could have become a payment, the $ 30,000 was a deposit and never became a payment. We therefore lack jurisdiction under section 6512(b) to order a refund of any part of this amount. Respondent *587 has consistently treated the $ 30,000 remittance as a payment or series of payments for the years 1981, 1982, and 1983 by refunding the amounts allocated to 1981 and 1983 with interest and refusing to refund, as time-barred, the amount allocated to 1982. Respondent's current argument that the $ 30,000 remittance was a deposit is therefore inconsistent with all of respondent's prior actions. Petitioners argue that the $ 30,000 remittance became a payment for 1983 when respondent issued the notice of deficiency for that year. While we disagree with petitioner that Cohen v. United States, 23 Cl. Ct. 717 (1991), affd. 995 F.2d 205 (Fed. Cir. 1993) and Estate of Goetz v. United States, 286 F. Supp. 128 (W.D. Mo. 1968), support this proposition, [4] petitioners may have intended that their $ 30,000 deposit would become a payment of tax when respondent determined a deficiency. The combination of petitioners' intent, as it might be determined at a trial, and respondent's treatment of the $ 30,000 as a payment might well support the conclusion that the remittance became a payment for 1983 when respondent *588 issued the notice of deficiency for that year. However, because respondent has yet to assess any tax for 1983, a finding that the deposit became a payment upon issuance of a notice of deficiency would be directly contrary to the per se rule in Thomas v. Mercantile Natl. Bank, supra.Although, like the panel in Ford v. United States, supra, we have misgivings about the per se rule, Risman v. Commissioner, supra; Fortuano v. Commissioner, 41 T.C. 316, 322 (1963), affd. 353 F.2d 429 (3d Cir. 1965), the decision in Thomas v. Mercantile Natl. Bank, supra, constrains us to apply it, especially in light of the refusal by the Court of Appeals for the Fifth Circuit in Ford to revisit the issue en banc. *589 Issue 2. Statutory Mitigation Provisions
As part of petitioners' argument that we should grant the motion to amend their petition, they argue that the statutory mitigation provisions, secs. 1311-1314, would allow us to order respondent to refund the $ 13,500 in issue. Petitioners argue that the circumstance of adjustment that would trigger operation of the mitigation provisions in this case is described in section 1312(4). Even if the circumstances described in section 1312(4) were or should become present in this case (and we do not believe they are or would be), the statutory mitigation provisions would provide no basis for granting petitioners the relief they seek from this Court. Our decision would only be a "determination" that would lift the bar of the statute of limitations to allow petitioners to file a claim for refund with respondent and, if respondent denied it, to file a suit for refund in the Court of Federal Claims or a Federal District Court. Compare secs. 1313(a)(1) and 1314(b) with 28 U.S.C. secs. 1346(a)(1) and 1491(a)(1) (1988). Conclusion
We lack jurisdiction to order respondent to refund $ 13,500 as requested *590 by petitioners in this case because no more than $ 3,000 of petitioners' remittance has ever become a payment of tax for 1983 within the meaning of section 6512(b), and that $ 3,000 has already been refunded. We will therefore deny petitioners' motion for leave to amend their petition to claim a refund of the remaining part of their remittance that they contend is an overpayment. To reflect the foregoing, An order denying petitioner's motion for leave to amend their petition will be issued. Footnotes
1. 50 percent of the interest due on the entire deficiency.↩
1. Rev. Proc. 84-58, 1984-2 C.B. 501, describes IRS procedures with respect to remittances to stop the running of interest on deficiencies. Under Rev. Proc. 84-58, supra↩, only overpayments with respect to a proposed, determined or assessed tax liability will be refunded with interest. Remittances made as deposits in lieu of a cash bond will stop the running of interest in respect of a tax liability that may be determined, but are not subject to a claim for credit or refund as an overpayment, and the excess of the deposit over the liability ultimately determined will not bear interest under sec. 6611.
2. In the statement of account delivered to petitioners with their $ 3,000 refund, respondent said that she had posted the remittance of Jan. 9, 1985, as an "advance payment" of tax and grouped it with other payments of tax for the year 1983, including estimated tax payments and other amounts characterized as "subsequent payments" that appear to have been paid with petitioners' extension request and joint return.↩
3. If respondent is correct in this view, and if petitioners reported as interest income on their 1990 and 1991 income tax returns the "interest" portions of the amounts paid to them by respondent in those years, petitioners would be entitled, upon filing timely claims therefor, to refunds of the income tax paid on the "interest" portions of those receipts.↩
4. Cohen v. United States, 23 Cl. Ct. 717 (1991), affd. 995 F.2d 205 (Fed. Cir. 1993) (remittance made after notice of deficiency and after untimely assessment held refundable as an overpayment); Estate of Goetz v. United States, 286 F. Supp. 128↩ (W.D. Mo. 1968) (remittance made after notice of deficiency but before assessment held refundable as a deposit).