**Owen A. MORAN and Jean B. Moran, Plaintiffs–Appellees,**

v.

**UNITED STATES of America, Defendant–Appellant.**

Nos. 94–3654, 94–3874.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1995.

Decided Aug. 24, 1995.

Thomas A. Pasquesi (argued), Theodore A. Pasquesi, Pasquesi, Cengel & Pasguesi, Highland Park, IL, for Owen A. Moran and Jean B. Moran.

Gary R. Allen, Gilbert S. Rothenberg, Robert L. Handros, Dept. of Justice, Tax Div., Appellate Section, Sally J. Schornstheimer (argued), Dept. of Justice, Tax Div., Washington, DC, for U.S.

Before FLAUM and MANION, Circuit Judges, and SHARP,* District Judge.

FLAUM, Circuit Judge.

The United States appeals from a decision of the district court determining that it must refund as an overpayment money remitted by taxpayers Owen and Jean Moran because the government had failed to assess their taxes in a timely manner. The government contends that the late assessment, which followed a liability settlement between the parties in tax court over alleged income tax deficiencies for 1980 and 1981, is inconsequential because the taxpayers had actually paid their taxes shortly after filing their case in the tax court, a time well before the period within which to assess any tax. We now reverse.

I.

Owen and Jean Moran filed joint federal income tax returns for the tax years 1980 and 1981 on April 15, 1981, and April 15, 1982, respectively. The Internal Revenue Service ("IRS") audited those returns, determined that additional taxes were due, and on July 8, 1985, issued a notice of deficiency to the taxpayers. The taxpayers responded by filing a petition with the tax court contesting the deficiency determination.

On December 13, 1985, and July 14, 1986, the Morans remitted to the IRS $331,000 and $255,383, respectively. In letters accompa-

* The Honorable Allen Sharp, Chief Judge of the United States District Court for the Northern District of Indiana, sitting by designation.

nying the remittances, the Morans' tax preparer stated:

> we have been requested to submit the following check ... which is to be treated as a partial payment of tax and interest (*not* as a deposit in the nature of a cash bond) under the purview of Section 6, Revenue Procedure 84–58.

(emphasis in original). The remainder of each letter indicated how much of the remittance should be allocated toward the alleged tax deficiency and how much should be applied to interest owed.

Approximately four years later, the IRS and the Morans settled the case. The settlement reflected an agreement that there were deficiencies for 1980 and 1981 but in amounts less than those asserted in the deficiency notice, the total owed approaching $220,000 plus interest. The tax court entered a decision reflecting the settlement, in which the parties agreed to overpayments for 1980 of $99,246 and for 1981 of $114,315, respectively, on November 15, 1990.

Following the November decision, the IRS had until April 15, 1991—150 days following the tax court decision—to assess the tax due under the decision. The IRS failed to do this until September 9, 1991, when the IRS gave the Morans credit, including interest, for the remittances that had been made in 1985 and 1986, and applied the overpayments, including interest, against the Morans' acknowledged liabilities for another tax year. The taxpayers responded to the IRS's tardiness by filing a refund claim on November 12, 1991, for the amounts sent to the IRS in 1985 and 1986 that had been assessed on September 9. The Morans argued that the late assessment vitiated their additional 1980 and 1981 tax liability and required the IRS to refund the earlier remittances.

The IRS denied the refund claims, whereupon the Morans filed the instant suit. The Morans contended that the government had not assessed any tax and that there could be no tax liability without an assessment; therefore, the money they had remitted in 1985 and 1986 should be refunded. The government responded that the Morans' earlier remittances were in fact tax payments, as indicated in their letters, making the late assessment irrelevant. Even if the Morans were entitled to a refund, the government continued, they could not collect because they had not requested their refund in a timely fashion. The government also filed a counterclaim for any excess interest credited to the Morans account. The government asserted that the only way the Morans would be entitled to a refund would be if their 1985 and 1986 remittances could be classified as deposits in the nature of a cash bond and not as payments of taxes and that taxpayers may only earn interest on the latter.

On cross-motions for summary judgment, the district court ruled in favor of the Morans. Relying on the Supreme Court's decision in *Rosenman v. United States,* 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), the court viewed the money sent to the IRS simply as the Morans' way of halting the accrual of penalties and interest until the IRS could formally assess a tax. While the court acknowledged the possibility that a taxpayer might intend to pay a tax prior to receiving a formal assessment, the district court concluded that did not occur here, where the taxpayers protested their liability in tax court for a number of years following the remittance. The district court also found that the taxpayers had filed timely claims for refunds since the allegedly relevant statute of limitations only applied where a tax has actually been paid. The court apparently rejected the government's counterclaim too, although it did so without directly addressing the issue in its written opinion. This appeal followed.

## II.

On appeal, the government raises a number of arguments based on both the merits of and our jurisdiction over this case. It first argues that the Morans had no right to a refund because they did not overpay their taxes. It also asserts that 26 U.S.C. § 6511(a) deprived the district court of jurisdiction over the case because the refund claims were untimely, coming more more than three years after the returns were due and more than two years after the taxes were paid. The government similarly con-

tends that 26 U.S.C. § 6512 abrogated jurisdiction because it prohibits a suit for a refund in a district court where the taxpayer has filed a petition in the tax court with respect to a notice of deficiency regarding the same matter. All these contentions essentially hinge on one issue: whether the remittances made by the Morans in 1985 and 1986 were payments of tax or deposits that the IRS converted into payments in September, 1991. We review the district court's decision on this legal question *de novo*. *Hefti v. I.R.S.*, 8 F.3d 1169, 1171 (7th Cir. 1993).[1]

■ Initially, determining whether the Morans made a deposit or a payment depends on what significance attaches to a formal IRS tax assessment. A refund suit like the Morans' will lie only where the government has collected more money from the taxpayer than it had a right to take. An assessment often precedes any tax collection, but that is not necessarily the case. In *Lewis v. Reynolds*, 284 U.S. 281, 52 S.Ct. 145, 76 L.Ed. 293 *modified*, 284 U.S. 599, 52 S.Ct. 264, 76 L.Ed. 514 (1932), an estate administrator sought a refund after paying taxes following an audit. The administrator claimed that deductions for state taxes should have been allowed. The IRS responded by determining that even if the administrator were correct, the administrator had not been entitled to certain other deductions he had taken for attorney's fees. The administrator replied that the time for collecting and assessing those other deductions had passed, and the IRS cannot offset a valid refund claim with money allegedly owed but basically uncollectable. The Court adopted the position of the IRS. Quoting the Tenth Circuit's decision below, the Supreme Court noted:

> While no new assessment can be made, after the bar of the statute has fallen, the taxpayer, nevertheless, is not entitled to a refund unless he has overpaid his tax. The action to recover on a claim for refund is in the nature of an action for money had

and received and it is incumbent upon the claimant to show that the United States has money which belongs to him.

*Id.* at 283, 52 S.Ct. at 146.

■ Thus, an assessment is not a prerequisite to tax liability. Though the Morans make it out to be more, an assessment is only a formal determination that a taxpayer owes money. *Stevens v. United States*, 49 F.3d 331, 336 (7th Cir.1995). It is more or less a bookkeeping procedure that permits the government to bring its administrative apparatus to bear in collecting a tax. *Laing v. United States*, 423 U.S. 161, 170 n. 13, 96 S.Ct. 473, 479 n. 13, 46 L.Ed.2d 416 (1976); 26 U.S.C. § 6203. Indeed, our tax system would function poorly were not most taxes "self-assessed." *United States v. Boyle*, 469 U.S. 241, 249, 105 S.Ct. 687, 691, 83 L.Ed.2d 622 (1985). A formal IRS assessment is an important determination in many cases, and the threat of one is a significant means of maintaining a system of voluntary compliance, *see United States v. National Bank of Commerce*, 472 U.S. 713, 721, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985), but it is neither the beginning nor the end of tax liability. The Morans owed taxes, and the government's failure to assess them timely does not change that fact. The question is whether the government had the means by which to collect them. The government concedes that any taxes collected on the 1991 assessment would be untimely collected. The government maintains, however, that the Morans actually paid their taxes in 1985 and 1986, thus rendering any subsequent assessment unnecessary.

The Morans respond that the government was merely holding their 1985 and 1986 remittances as deposits. Unlike the *Lewis* administrator, who had paid taxes and then requested a refund, the Morans submit that they have never paid any tax. They instead point us to a line of cases, beginning with *Rosenman v. United States*, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945), concerning the difference between remittances to the IRS

---

1. This case comes to us on a grant of summary judgment, which procedural posture would ordinarily require us to consider the facts in the light most favorable to the non-moving party. In the instant case, the facts are not in dispute, and both sides appear to agree that summary judgment for one party or the other is appropriate.

intended as payments of tax and remittances intended as deposits in the nature of a cash bond. Whereas the government might have right to the former in this case, they do not have a right to the latter.

In *Rosenman*, the executors of an estate had delivered a $120,000 check to the Collector of Internal Revenue "as a payment on account of the Federal Estate tax" prior to their filing a tax return. *Id.* at 660, 65 S.Ct. at 537. They noted that the "payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due." *Id.* The Collector placed the amount in a suspense account and did not immediately apply the funds in the account to any taxes. The executors subsequently filed a return indicating that $80,224 was due in estate taxes, after which the Collector advised them that that sum had been taken from their suspense account and applied to the tax liability. Slightly less than three years later, the executors filed a claim for a refund for the remaining $39,776. At about the same time, after an audit of the tax return, the Commissioner determined that the total tax liability was $128,759. The Commissioner then assessed a deficiency of $48,535, to which the Collector applied the balance of the suspense account. The executors paid the remainder to the Collector in April, 1938. The Commissioner then rejected the refund claim. In May, 1940, the executors filed a second claim for a refund, based on additional deductions, of $24,717. The Commissioner rejected that claim as untimely based on the statutory predecessor to 26 U.S.C. § 6511, since the tax payments, except for the remainder paid in April, 1938, had been received more than three years— the statute of limitations period—before the claim was made. The Court of Claims agreed with the Commissioner and ruled the refund claim time-barred. *Id.* at 660–61, 65 S.Ct. at 537–38.

The Supreme Court reversed. The Court held that the money remitted in 1934 neither discharged any liability nor paid one that was asserted. Rather, "[t]here was merely an interim arrangement to cover whatever con-tingencies the future might define," and the contingency was not realized until the tax obligation became defined in April, 1938. *Id.* at 662, 65 S.Ct. at 538. The Court also emphasized that the government itself had not considered the 1934 remittance as a tax payment but rather had treated it as funds in escrow. "The receipt by the Government of moneys under such an arrangement carries no more significance than would the giving of a surety bond. Money in these accounts is held not as taxes duly collected but as a deposit made in the nature of a cash bond for the payment of taxes thereafter found to be due." *Id.* at 662, 65 S.Ct. at 538.

Lower courts have since debated what rule *Rosenman* established or implied. In cases focusing on what event commenced the limitations period for filing a refund claim, the Fifth and Eighth Circuits have held that *Rosenman* created a *per se* rule that whenever the taxpayer has somehow disputed liability for a deficiency, there can be no payment of taxes until there has been a formal assessment. *United States v. Dubuque Packing Co.*, 233 F.2d 453 (8th Cir.1956); *Thomas v. Mercantile Nat'l Bank at Dallas*, 204 F.2d 943 (5th Cir.1953); *Wiltgen v. United States*, 813 F.Supp. 1387 (N.D. Iowa 1992); *Estate of Goetz v. United States*, 286 F.Supp. 128 (W.D.Mo.1968); *see also Ford v. United States*, 618 F.2d 357, 359–61 (5th Cir.1980) (questioning the wisdom of *Mercantile Nat'l Bank* but following it as circuit precedent); *Schmidt v. Commissioner*, 272 F.2d 423, 428 (9th Cir.1959) (discussing *Mercantile Nat'l Bank* favorably). The *Mercantile Nat'l Bank* court in particular emphasized the illogic any other result would work by allowing the statute of limitations on refund claims to run against the taxpayer before the taxpayer knew what to claim. 204 F.2d at 944.

■ The Second, Third, Fourth, Sixth and Federal Circuits, on the other hand, have embraced a more open approach. *Blatt v. United States*, 34 F.3d 252 (4th Cir.1994); *Cohen v. United States*, 995 F.2d 205 (Fed. Cir.1993); *Ewing v. United States*, 914 F.2d 499 (4th Cir.1990), *cert. denied*, 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991); *Ameel v. United States*, 426 F.2d 1270 (6th Cir. 1970); *Fortugno v. Commissioner*, 353 F.2d

429 (3d Cir.1965), *cert. dismissed,* 385 U.S. 954, 87 S.Ct. 337, 17 L.Ed.2d 302 (1966); *Charles Leich & Co. v. United States,* 329 F.2d 649 (Ct.Cl.1964); *Hill v. United States,* 263 F.2d 885 (3d Cir.1959); *Rose v. United States,* 256 F.2d 223 (3d Cir.1958); *Lewyt Corp. v. Commissioner,* 215 F.2d 518 (2d Cir.1954), *aff'd in part, rev'd in part on other grounds,* 349 U.S. 237, 75 S.Ct. 736, 99 L.Ed. 1029 (1955); *Crosby v. United States,* 889 F.Supp. 148, 75 A.F.T.R.2d 95–1718 (D.Vt. 1995). These courts have held that a remittance prior to a formal assessment may be a tax payment. Exactly when that happens depends on the circumstances of each case, the lack of an assessment being only one consideration among many. The cases suggest that a number of factors should play an important role besides the timing of the assessment, including the taxpayer's intent upon making the remittance, how the IRS treats the remittance upon receipt, and when the tax liability is defined. *See Ewing,* 914 F.2d at 503; *Ameel,* 426 F.2d at 1273.

In addition to the debate over *Rosenman,* we note that the IRS has offered specific guidance for the circumstances under which it will consider a remittance made in response to an alleged deficiency a payment or a deposit. Revenue Procedure 84–58, 1984–2, which covered the remittances the Morans sent, provides procedures for taxpayers to make remittances in order to stop the running of interest on deficiencies. Section 4.03 states that "[a] remittance not specifically designated as a deposit in the nature of a cash bond will be treated as a payment of tax if it is made in response to a proposed liability...." Similarly, section 4.01 notes that "a remittance made after the mailing of a notice of deficiency in complete or partial satisfaction of the deficiency will, absent any instructions from the taxpayer, be considered a payment of tax and will be posted to the taxpayer's account as soon as possible."

We have not addressed the question raised by *Rosenman* and discussed in Rev.Proc. 84–58. Our decision in *Plankinton v. United States,* 267 F.2d 278 (7th Cir.1959), cited *Dubuque Packing* and *Mercantile Nat'l Bank* favorably, but the government had conceded the issue in *Plankinton* and agreed that remittances made prior to the defining of a liability were not tax payments. *Id.* at 280.[2] In examining the issue, we agree with *Ewing*'s conclusion that "for the purposes of deciding whether a remittance was a payment of tax, formal assessment is only one factor to be considered." *Ewing,* 914 F.2d at 503. We also believe that elements listed in Ewing accurately reflect what a court should analyze in categorizing a particular remittance.

In the instant case, the remittances should be characterized as payments of tax rather than as deposits in the nature of a cash bond for several reasons. First, the Morans expressly requested that the remittances be treated as payments of tax. Their letters to the IRS demonstrate an awareness of the relevant Revenue Procedure, a clear understanding of the difference between the two classifications, and a desire to choose one rather than the other. In their brief, the Morans cite language from the *Cohen* opinion noting that tax rules "should be clear and uniformly applied, that each party should abide by the rules, and that each should accept the consequences of its choice of action under those rules." *Cohen,* 995 F.2d at 209. We agree: The Morans opted to make payments of tax, and they should not now assert they meant to do otherwise.

The Morans explain that they meant to have the remittance "treated" as a payment of tax, even though it remained a deposit, thus creating a third category of remittances. Their reading of Rev.Proc. 84–58 is somewhat strained. If any remittance made prior to an assessment were necessarily a deposit, regardless of how the IRS "treated" that remittance, taxpayers would almost always want to have remittances "treated" as payments, given the fact that such remittances bear interest and that any payments allocated to interest are deductible. *See* 26 U.S.C.

---

**2.** An unpublished opinion from the Central District of Illinois, an opinion on which the district court relied, cited *Goetz* (which in turn depended on *Dubuque Packing* ) as its basis for holding in a similar case that there can be no payment on a tax liability before there is an assessment. *Becker Brothers, Inc. v. United States,* 88–1 U.S.T.C. P 9262, 1988 WL 75234 (C.D.Ill. Feb. 3, 1988).

§ 461(f); Rev.Rul. 89–6, 1989–1 C.B. 119, 121. In other words, the Morans appear to want their remittance to be whatever best serves their interests at any given time. We can understand such a request, but we cannot honor it. *Cf. Ewing,* 914 F.2d at 502 n. 6. Taxpayer intent has an important place in the balancing test employed by *Ewing* and other courts, but we may only derive that intent from reasonable interpretations of the taxpayer's actions, not from the taxpayer's after-the-fact claims and rationalizations.

Second, unlike the *Rosenman* taxpayers, the Morans already had received a deficiency notice as a result of an IRS audit and remitted money in response to this asserted tax liability. Far from there being "contingencies the future might define," the Morans knew the IRS thought they owed additional taxes. The Morans counter, and the district court agreed, that case law would prevent the Morans from both satisfying a tax liability and simultaneously contesting it. *See Lewyt,* 215 F.2d at 522 (holding that taxpayer "was not entitled" to have remittances "treated as satisfaction of its tax liabilities, in whole or in part, and at the same time continue to contest such liabilities, or at least leave the Collector with an ambiguous situation on his hands"). Thus, the Morans argue, they could not file a petition to contest tax liability in the tax court in October, 1985, and then, within the next ten months, remit sums to satisfy the contested tax twice. *See also Charles Leich and Co. v. United States,* 329 F.2d 649, 653 (Ct.Cl.1964) (adopting reasoning of *Lewyt* on this point); *cf. United States v. Consolidated Edison Co. of New York, Inc.,* 366 U.S. 380, 391–92, 81 S.Ct. 1326, 1332–33, 6 L.Ed.2d 356 (1961) (in addressing a different issue, Court considered remittance a deposit and not a payment where taxpayer had no other way of stopping accrual of interest and clearly intended to contest liability for the tax).[3]

Whatever *Lewyt*'s language may suggest, the tax code provides for just such an eventuality:

> Any amount paid as a tax or in respect of a tax may be assessed upon the receipt of such payment notwithstanding the provisions of subsection (a). In any case where such amount is paid after the mailing of a notice of deficiency under section 6212, such payment shall not deprive the Tax Court of jurisdiction over such deficiency determined under section 6211 without regard to such assessment.

26 U.S.C. § 6213(b)(4). Similarly, Rev.Proc. 84–58, section 4.01, indicates that remittances considered as payments of a tax and made solely following mailing of a notice of deficiency "will not deprive the Tax Court of jurisdiction over the deficiency." The IRS recognized this effect of Rev.Proc. 84–58 in a 1989 revenue ruling, in which it reversed the position it had taken in *Charles Leich* and noted that current administrative procedures did not require an assessment of the amount remitted by the taxpayer for that remittance to qualify as a payment of tax. Rev.Rul. 89–6, 1989–1 C.B. 119. *See also* Mark Aquilio, *Make Sure Tax Deposits are not Payments,* 54 Tax'n for Acct. 89 (1995). We thus disagree with the implications of the Federal Circuit's conclusion in *Cohen* that the decision to dispute a liability necessarily signifies an intent not to make a payment on that liability.[4]

Admittedly, the government's argument here is not as strong as it has been in other cases. In *Ewing,* for example, the taxpayers did not remit sums to the government until after the they and the IRS had agreed to a deficiency amount. *Ewing,* 914 F.2d at 500. Likewise, in *Ameel,* the taxpayer, an estate executor, had sent the IRS money without any intent to contest the alleged deficiency; it was only after the original executor was replaced by another that the challenge to the tax arose. *Ameel,* 426 F.2d at 1271–72. Nonetheless, we believe that such an explicit

---

3. It should be noted Congress more or less overruled the result in *Consolidated Edison* with the enactment of 26 U.S.C. § 461(f).

4. Contesting a deficiency in the Tax Court rather than in a district court or the Claims Court does give a taxpayer the option of not paying the deficiency before filing suit, *see Lundy v. IRS,* 45 F.3d 856, 860 (4th Cir.1995), but that does not mean that a taxpayer who chooses that option has necessarily chosen not to pay a tax earlier.

intent to pay is unnecessary where, as here, the taxpayers clearly expressed a desire to have their remittances treated as payments.

Third, the IRS here treated the remittances as tax payments by posting interest to the Morans' account. The IRS thus thought, and with good justification, that the Morans were paying their taxes but intended to contest them. This objective manifestation of the IRS's intent belies any indication that they might have considered the funds a deposit.

■ Having decided that the Morans made payments of tax in 1985 and 1986, they lose this case; we have only to address the somewhat theoretical question of why they lose.[5] Taking jurisdictional issues first, any suit against the United States requires a waiver of immunity, and the United States is free to impose conditions on its consent to be sued. In the case of a refund suit, that consent requires satisfaction of the statute of limitations period of 26 U.S.C. § 6511(a). *Kuznitsky v. United States*, 17 F.3d 1029, 1031 (7th Cir.1994). Section 6511(a) requires that an initial refund claim be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever date is later. Given that the tax years in question were 1980 and 1981 and the payments were made in 1985 and 1986, 1991 was clearly too late a date to initiate a refund claim.

■ The Morans' claim similarly fails because of another jurisdictional provision: the prohibition in § 6512(a) against filing a second claim for recovery of any taxes that were the subject of a suit in the tax court. *Solitron Devices, Inc. v. United States*, 862 F.2d 846, 848–49 (11th Cir.1989) (*per curiam*). The Morans contested and settled the tax deficiency at issue in tax court; the Internal Revenue Code does not permit the Morans a second bite at the apple by filing a refund claim based on the same issues. If we had determined that the government had not collected the Morans' taxes until 1991, an exception under § 6512(a)(3) for amounts collected

after the period of limitations would have applied and allowed the Morans to claim a refund for the amount improperly collected. *See also* 26 U.S.C. § 6401 (defining "overpayment" to include "that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto"). But since, as we have determined, the government "collected" the taxes when the Morans paid them in 1985 and 1986, this exception offers the Morans no solace either.

The Morans argue that our decision in *Hefti* implies that § 6512(a) does not bar them from seeking relief for actions taken by the government after the tax court decision. In *Hefti*, the taxpayers asserted that a late assessment had rendered improper the government's collection of the taxpayers' deposits. The government did not contest the *Hefti* taxpayers' categorization of their earlier remittance as a deposit and instead argued, ultimately successfully, that the assessment had not been late. *Hefti*, 8 F.3d at 1171–73. Here we have the reverse situation: the government concedes that an assessment was late but asserts that the untimeliness of the assessment is irrelevant because the taxpayers had already paid their taxes. The Morans are thus correct that § 6512(a) is not a bar to their challenge of actions occurring after the tax court decision. The problem, of course, is that under our analysis, the relevant payment occurred well before the tax court decision, thus making their challenge fall within the ambit of § 6512(a)'s prohibition on relitigating in a district court that which a tax court has already decided.

Finally, although we do not reach the merits, it is clear the Morans would lose on them as well. As our earlier discussion of *Lewis* implies, the Morans are not entitled to a refund because they did not overpay their taxes, and the lack of a timely assessment does not change that fact.

For the foregoing reasons, the decision of the district court is reversed and remanded

---

5. Because we hold that the Morans were not entitled to a refund, we do not address the merits

of the government's counterclaim.

with directions that judgment be entered for the United States.

REVERSED AND REMANDED.