John A. ZEIER, The Estate of; Ben J. Yates, as personal representative of the Estate of John A. Zeier, Plaintiffs–Appellees,

v.

UNITED STATES INTERNAL REVENUE SERVICE, acting as an agency of the United States of America, Defendant–Appellant.

Nos. 95–35120, CV–92–00127–JDS.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 8, 1995.

Decided April 9, 1996

W. Scott Green, West, Patten, Bekkedahl and Green, Billings, Montana, for plaintiffs-appellees.

Gary R. Allen, Gilbert S. Rothenberg, Kirk C. Lusty, United States Department of Justice, Washington, D.C.; Diane G. Barz, Office of the United States Attorney, Billings, Montana, for defendant-appellant.

Before: D.W. NELSON and NOONAN, Circuit Judges, and TANNER, District Judge.*

D.W. NELSON, Circuit Judge:

The Internal Revenue Service ("IRS") appeals the district court's grant of a tax refund to the Zeier estate ("the estate"). The IRS contends that the court lacked jurisdiction to grant the refund, since 26 U.S.C. § 6511(a) provides that a refund claim must be filed within three years from the time an estate tax return was filed or two years from the time the tax was paid, whichever expires later.[1] In addition, the IRS contends that

---

\* The Honorable Jack E. Tanner, Senior United States District Judge for the Western District of Washington, sitting by designation.

**1.** The text of § 6511(a) reads in relevant part as follows:

§ 6511. *Limitations on credit or refund.*

(a) *Period of limitation on filing claim.*—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed

the court lacked jurisdiction to grant the refund even if the refund claim was timely filed under § 6511(a), since 26 U.S.C. § 6511(b)(2)(A) provides that a taxpayer cannot receive a refund for payments made more than three years prior to the refund claim.[2] We reverse the judgment of the court.

## FACTUAL AND PROCEDURAL BACKGROUND

John A. Zeier died on April 16, 1983. His estate tax return was initially due on January 16, 1984, but the estate filed for and received an extension to file and pay. The new due date for the estate tax return was July 16, 1984. This was the final date on which the estate could file its return, because 26 U.S.C. § 6081(a) allows only one six-month extension for filing estate tax returns.

On March 29, 1984, the Brower Law Firm, on behalf of the estate, sent a payment of $30,000 that, the accompanying letter stated, "represent[ed] payment of the estimated federal estate tax." The letter stated that difficulties in administering the estate made a precise inventory impossible at that time. Therefore, "the estimated payment (was) based on known assets of established values, plus guesses at the balance of the property we believe will accrue to the estate."

On July 16, 1984, the estate filed IRS Form 706, the United States Estate Tax Return. See Treas. Reg. § 20.6018–1(a)(estate tax return must be filed on Form 706 for every estate valued at over $60,000). On this form the estate provided the "value at date of death" of every part of the gross estate noted on the form. However, the estate did not attach any schedules indicating how it had arrived at these bottom-line amounts. Accompanying this form was a check for $15,453 representing the estate's total tax liability less the previous payment of $30,000.

The Brower Law Firm also sent to the IRS a July 13, 1984 letter stating that difficulties in valuation had made it necessary to estimate the value of nine items from the estate. The letter noted that "we are submitting this return at present but may have to revise it at a later time because there are still too many unknown quantities for the return to be considered accurate at present." "If necessary," the letter concluded, "an amended return will be filed with your office as soon as it is possible and practical to do so."

On March 12, 1985, Sandy Worrell, an IRS Estate & Gift Group Clerk, sent the estate a letter stating that "(t)he Federal Estate Tax Return (Form 706) for Mr. John Zeier has been selected for review." In order for the IRS "to process the return," the IRS needed the estate to send the schedules listed on the form for parts of the estate with a positive value.

On January 8, 1990, the estate filed an amended Form 706, complete with the requisite schedules. The form indicated a refund due of $18,578.77, plus interest. On February 10, 1990, the IRS stated that it would not grant the estate's request for a refund, because the request "was received after the deadline for filing."

The estate filed suit in district court. Both parties agreed to have the case decided on stipulated facts. Both parties also agreed that the only issue before the court was whether the court had subject matter jurisdiction over the estate's claim for a refund pursuant to § 6511(a).

On July 28, 1994, the court issued a memorandum, order and judgment awarding to the estate the requested refund amount of $18,578.77, plus interest. The basis for the court's ruling was its determination that "the Form 706 document filed on July 16, 1984

---

by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

**2.** The text of § 6511(b)(2)(A) reads in relevant part as follows:

(2) *Limit on amount of credit or refund.—*

(A) *Limit where claim is filed within 3–year period.—*If the claim was filed by the taxpayer during the 3–year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return.

was merely a tentative estimate of liability and was, therefore, not a bona fide return capable of starting the running of the statute of limitations for filing a refund claim."

The IRS filed a motion for reconsideration, to which the court responded in a November 23, 1994 memorandum and order. In its motion for reconsideration, the IRS for the first time argued that the court did not have jurisdiction to grant the estate's refund request under § 6511(b)(2)(A). The court allowed the IRS to make this new argument, on the grounds that § 6511(b)(2)(A) is a jurisdictional statute and thus not waivable.

With respect to the refund claim, the court once again ruled in favor of the estate. The court determined that remittances made prior to filing a final return are deposits, not payments. Because the estate's 1984 form was tentative and incomplete, the payments accompanying the 1984 extension request and Form 706 were deposits, not payments.

This appeal followed.

## STANDARD OF REVIEW

■ Mixed questions of law and fact are reviewed de novo. *Moss v. Commissioner*, 831 F.2d 833, 838 (9th Cir.1987).

## MISSING SCHEDULES AND ESTIMATED ESTATE TAX RETURNS

■ "[T]imely filing of a refund claim [is] a jurisdictional prerequisite to bringing suit." *Commissioner v. Lundy*, —— U.S. ——, ——, 116 S.Ct. 647, 651, 133 L.Ed.2d 611 (1996); *see also Miller v. U.S.*, 38 F.3d 473 (9th Cir.1994). Under § 6511(a), a taxpayer must file a refund claim "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later. . . ."

The district court ruled that an estate tax form based on estimates does not constitute a return for the purpose of running the statute of limitations under § 6511(a). The court, citing *Florsheim Brothers Drygoods Co. v. United States*, 280 U.S. 453, 50 S.Ct. 215, 74 L.Ed. 542 (1930), found that the estate's intent, coupled with the lack of

schedules, made the form "a tentative or estimated return," not "a complete return sufficient to start the running of the limitations period."

■ The district court erred. An estate tax return based on estimates starts to run the statute of limitations under § 6511(a). In classifying the 1984 Form 706 as an estimated return, the court appears to have confused the estate tax filing procedures with the income tax procedures that allow an estate to pay estimated individual income tax. *See* 26 U.S.C. § 6654(*l*). In estate tax, if a taxpayer cannot make precise determinations in valuing the estate, the bottom-line estimated values serve as the basis for calculating the estate tax. As Treas. Reg. § 20.6081–1(c) states,

"(a) return as complete as possible must be filed before the expiration of the extension period granted. The return thus filed will be the return required by § 6018(a) and any tax shown thereon will be the 'amount determined by the executor as the tax' referred to in section 6161(a)(2), or the 'amount shown as the tax by the taxpayer upon his return' referred to in section 6211(a)(1)(A)."

■ The Form 706 filed by the estate in 1984 constituted a specific statement of income and deductions and thus served as a valid return. The estate provided specific total values for the distinct parts of the gross estate and for distinct deductions. The estate's accountant signed the return, declaring under penalty of perjury that he had "examined this return" and that to the best of his knowledge the return was "true, correct, and complete." The fact that the July 17, 1984 letter indicated that the estate might file an amended return "if necessary" did not convert the Form 706 into a "tentative" return, nor did it serve as an informal refund claim. *See* Treas. Reg. § 20.6081–1(c)(taxpayer may subsequently file an amended return, but the amended return is not " 'the return' for purposes of Section 6511"); *Martin v. U.S.*, 833 F.2d 655 (7th Cir.1987).

That the estate failed to include the requisite schedules did not prevent the IRS from calculating the estate's tax liability. While the estate's return omitted the schedules, it

**1364**

did provide bottom-line totals for each part of the gross estate specified on Form 706. The March 12, 1985 letter from IRS clerk Sandy Worrell concerned what was needed for the IRS to audit the estate's return; it was not an indication that the IRS could not calculate the estate's tax liability based upon the data contained in the form.

*INTENT AND § 6511(a)*

■ Contrary to the district court's determination, *Florsheim* does not state that the taxpayer's intent governs how the IRS must interpret the estate tax form. The Court in *Florsheim* found that the legislative purpose underlying a temporary wartime tax form showed that the form was not a return for purposes of the statute of limitations—in other words, the governing intent was not the intent of taxpayer filling out the form, but the intent and "purpose" underlying the design of the form itself. 280 U.S. at 462, 50 S.Ct. at 218. As this court has asserted, a taxpayer's intent does not defeat a statutory mandate. *See Ehle v. U.S.,* 720 F.2d 1096, 1097 (9th Cir.1983).

Allowing a taxpayer's intent to suspend the statute of limitations would effectively void § 6511(a). By the court's reasoning, a taxpayer would merely have to say that he *might* amend the return in the future and the statute of limitations would be suspended indefinitely. A taxpayer could also avoid paying tax simply by withholding the requisite schedules.

*SECTION 6511(b)(2)(A) AND JURISDICTION*

■ The estate contends that the IRS waived the right to raise the issue of whether the court had jurisdiction under § 6511(b)(2)(A); according to the estate, this subsection is not jurisdictional in nature. The estate is incorrect. Following the Supreme Court in *Lundy,* we hold that § 6511(b)(2)(A) is jurisdictional. —— U.S. at ——–——, 116 S.Ct. at 650–51.

*DEPOSITS OR PAYMENTS*

■ Because we find that the 1984 return was not a "tentative" return, we also reverse the district court's ruling that the remittances made in 1984 were deposits, not payments. As explained above, the Internal Revenue Code does not allow for the filing of "tentative" estate tax returns. The Code explicitly provides that absent specific designation as a deposit, remittances paid at the time the return was due constitute payments "whether precisely calculated or not." *Blatt v. United States,* 34 F.3d 252, 256 (4th Cir. 1994); *see also Ehle,* 720 F.2d 1096, 26 U.S.C. §§ 6401(c), 6151(a); Treas. Reg. §§ 20.6151–1, 6161–1, 6163–1, 6081–1.

Moreover, regardless of what the estate's representatives said in their 1992 affidavits, when the estate made its remittances in 1984 it described them as "payments," not deposits. The March 29, 1984 letter stated that the $30,000 check was "payment of the estimated federal estate tax." Likewise, in its July 16, 1984 Form 706 the estate placed the $30,000 remittance in the category of "prior payments." The remaining $15,453 paid on July 16, 1984 represented the "balance due."

■ We also reject the estate's argument that there can be no payment of tax before the IRS makes a formal assessment of the estate's tax liability. An assessment is merely "a bookkeeping procedure that permits the government to bring its administrative apparatus to bear in collecting a tax." *Moran v. U.S.* 63 F.3d 663, 666 (7th Cir.1995)(citing *Laing v. U.S.,* 423 U.S. 161, 170 n. 13, 96 S.Ct. 473, 479 n. 13, 46 L.Ed.2d 416 (1976); 26 U.S.C. § 6203). Most taxes are collected voluntarily, without an assessment; an assessment serves as the basis on which the IRS takes action against those who do not voluntarily pay their taxes on time. *Moran,* 63 F.3d at 666 (citations omitted). *See Ehle,* 720 F.2d at 1096–97 (remittances without assessment constitute tax payments, not deposits); *see also Jones v. Liberty Glass Co.,* 332 U.S. 524, 531–2, 68 S.Ct. 229, 232–33, 92 L.Ed. 142 (1947), *reh'g denied,* 333 U.S. 850, 68 S.Ct. 657, 92 L.Ed. 1132 (1948)(remittances in excess of what is due are overpayments); 26 U.S.C. § 6401(c); S. Rep. 221, 78th Cong., 1st Sess. at 34–5 (1943)(remittance made when there is no tax liability constitutes overpayment).

*EQUITABLE TOLLING*

This court in *Brockamp v. U.S.* has determined that "the statute of limitations in § 6511 may be equitably tolled." 67 F.3d 260, 262 (9th Cir.1995), *petition for cert. filed* 64 U.S.L.W. 3534 (U.S. Jan. 31, 1996)(No. 95–1225); *see also Schwartz v. U.S.,* 67 F.3d 838, 841 (9th Cir.1995). However, equitable tolling does not apply to the facts of this case.

As the Supreme Court noted in *Irwin v. Department of Veterans Affairs,* federal courts have extended equitable tolling "only sparingly," inasmuch is it "amounts to little, if any, broadening of the congressional waiver." 498 U.S. 89, 95–96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990), *reh'g denied,* 498 U.S. 1075, 111 S.Ct. 805, 112 L.Ed.2d 865 (1991). This court has applied equitable tolling in only a few limited circumstances, such as senility or mental incompetence, *Brockamp,* 67 F.3d at 263, tricks or inducements by the opposing party, *Supermail Cargo, Inc. v. U.S.,* 68 F.3d 1204, 1207 (9th Cir. 1995), or a "unique ... lack of clarity in our circuit's law." *Naton v. Bank of California,* 649 F.2d 691, 696 (9th Cir.1981).

In addition, as the Supreme Court recently indicated in *Lundy,* the scope of equitable tolling as applied to § 6511 is particularly narrow. In discussing the application of § 6511 to situations involving the timely filing of returns and refund claims, the Court noted that it was "bound by the language of the statute as it is written;" courts are not at liberty " 'to rewrite [the] statute because [they] might deem its effects susceptible of improvement.' " *Lundy,* —— U.S. at ——–——, 116 S.Ct. at 656–57 (*quoting Badaracco v. Commissioner of Internal Revenue,* 464 U.S. 386, 398, 104 S.Ct. 756, 764, 78 L.Ed.2d 549 (1984) )("a statute of limitations ... must receive a strict construction in favor of the government"). Particularly problematic are applications of equity that create "an even greater inequity," namely, privileging the delinquent over the timely filer of a return or "a claim for refund." *Id.* at ——, 116 S.Ct. at 654; *see also Rothensies v. Electric Storage Battery Co.,* 329 U.S. 296, 301–02, 67 S.Ct. 271, 273, 91 L.Ed. 296 (1946)(statute of limitations in tax cases "tempt[s] the equity-minded judge to seek for ways of relief in individual cases," but adherence to the statute is "an almost indispensable element of fairness as well as of practical administration").

While we sympathize with the estate's desire to obtain a refund for the taxes it overpaid, this is not a situation in which equitable tolling applies. The executor of the estate has made no claim of mental incompetence. The IRS did not mislead the estate or prevent it from filing for a refund within the statutory deadline. There is also no precedent indicating that we recognize an exception to the long-standing rule that an estimated estate tax return serves as the final return.

Moreover, that the estate was involved in litigation and might not have regarded its return as final does not warrant providing equitable relief. The estate itself did not take advantage of established procedures for seeking extension of the refund limitations period when an estate is involved in litigation. *See O'Brien v. United States,* 766 F.2d 1038, 1041 n. 3 (7th Cir.1985). The estate is asking us to privilege those who do not try to ascertain filing requirements over those who try to work within them. This we decline to do. The Supreme Court has repeatedly held that we are bound by the technicalities of the tax system as defined by statute. If the estate believes that the current rules are unfair, its remedy lies in persuading Congress to reform the Internal Revenue Code. *See Rothensies,* 329 U.S. at 303, 67 S.Ct. at 274 (court cannot approve encroachments on statute "out of consideration for a taxpayer who for many years failed to file or prosecute its refund claim;" it is for Congress, not courts, to create and limit exceptions).

*CONCLUSION*

For the above reasons, we hold that the court lacked jurisdiction to grant the estate's refund claim. We REVERSE the judgment of the court.