[NOT FOR PUBLICATION]

United States Court of Appeals United States Court of Appeals
for the First Circuit for the First Circuit



No. 97-1729

GEORGE W. DAVID,

Plaintiff, Appellant,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge] 
[Hon. Kenneth P. Neiman, U.S. Magistrate Judge] 



Before

Selya, Circuit Judge, 
Aldrich, Senior Circuit Judge, 
and Boudin, Circuit Judge. 



Paul M. Stein with whom Malkasian, Hicinbothem & Mollica was on 
brief for appellant.
Bridget M. Rowan with whom Gilbert S. Rothenberg, Attorneys, Tax 
Division, Department of Justice, Loretta C. Argrett, Assistant 
Attorney General, and Donald K. Stearn, United States Attorney, were 
on brief for appellee.



December 29, 1997


ALDRICH, Senior Circuit Judge. In this action to 

recover funds advanced to the Internal Revenue Service

("IRS") by George W. David, plaintiff-appellant, the

magistrate judge's opinion, confirmed by the district court,

acceptably reduced the dispute to what was the character of

David's remittance, whether a tax payment or a deposit, and

whether the equities overcame a decision otherwise favoring

the government. On summary judgment, it found the remittance

a payment, which meant that the refund claim had been made

too late, and denied any equitable extension. We affirm.

Shortly before April 15, 1990, when his 1989 income

tax return, and payment, were to fall due, David's business

records were taken into federal custody pursuant to a search

warrant. Without them he could not prepare his return or,

allegedly, even reasonably estimate his tax. On April 15 he

filed a request on Form 4868 for an automatic four month

extension of time to file his return. With this he enclosed

a check for $12,000, which the IRS negotiated. He later

obtained a second extension to October 15, 1990. He did not

file his 1989 return, however, until February 24, 1994.

On the return when filed David noted the $12,000 as

an "Amount paid with Form 4868." With credits, it turned out

that all that had been due was $749, and the return claimed

refund of the $11,251 balance. The refund claim was timely

under I.R.C. 6511(a). Cf. Oropallo v. United States, 994 

-2-

F.2d 25, 27 (1st Cir. 1993) (per curiam) (assuming that a

late return is a "return" within the meaning of 6511(a)),

cert. denied, 510 U.S. 1050 (1994). Unhappily, however, 

6511(b)(2)(A) limited the amount of credit or refund to the

amount of tax paid within the three years, plus the six

months extension preceding the refund claim. Accordingly, as

a claim for refund of a tax payment made on April 15, 1990,

David's return was some four months too late. It was not too

late if the remittance had simply been a deposit.

The IRS stood on its position of payment, and David

brought this suit. In his complaint, doubtless because

executed pro se, he asserted that he was suing for an income

tax refund of $11,251, which, inescapably, was the unused

portion of his $12,000 remittance. Eventually, when he

obtained counsel who examined the law, David realized that he

had intended the $12,000 to be a general deposit, not the

estimated tax payment (larger for safety), required to

accompany his Form 4868.

Concededly, whether a remittance to the IRS is a

payment, or is a general deposit whose recovery would not be

statutorily barred, may be a matter of intent and

circumstance. See generally Rosenman v. United States, 323 

U.S. 658, 662 (1945); Moran v. United States, 63 F.3d 663, 

668-69 (7th Cir. 1995); Blatt v. United States, 34 F.3d 252, 

254-55 (4th Cir. 1994). But even if the IRS is incorrect in

-3-

claiming that the circumstances shown warrant finding of a

tax payment as matter of law under I.R.C. 6513(b)(1), which

we do not decide, but cf. Gabelman v. Commissioner, 86 F.3d 

609, 612 (6th Cir. 1996) (holding remittance accompanying

Form 4868 to be a payment as a matter of law under

6513(b)(1)); Weigand v. United States, 760 F.2d 1072, 1073 

(10th Cir. 1985) (same), it is only natural to assume that

the $12,000 check was the payment that the form said was

required in the absence of any assertion to the contrary.

David points to no objective manifestation of his "deposit"

intention at the time of remittance.1 To this we add his now

counsel's inability, at oral argument, even to suggest a

purpose for intending a deposit.

We cannot decide in David's favor. Undoubtedly he

had a tax liability on April 15, 1990. See I.R.C. 6151(a); 

Manning v. Seeley Tube & Box Co., 338 U.S. 561, 565 (1950). 

His extension to file did not postpone this liability. See 

26 C.F.R. 1.6081-1(a) and 1.6081-4(b). His Form 4868

remittance, required to be an estimate of this liability, was

made in recognition thereof. With no further showing, the

presumed intention was to discharge the liability that

 

1. Neither party was able to produce David's Form 4868. His
oft-repeated characterization of his remittance as
"arbitrary" in calculation is insufficient in this regard.
Similarly insufficient are his contentions as to the IRS's
accounting practices, which reveal nothing of David's
supposed deposit intent.

-4-

renders the remittance a payment. Cf. Moran, 63 F.3d at 668; 

Blatt, 34 F.3d at 255-57; Ewing v. United States, 914 F.2d 

499, 504 (4th Cir. 1990), cert. denied, 500 U.S. 905 (1991); 

Ameel v. United States, 426 F.2d 1270, 1273 (6th Cir. 1970). 

Accordingly, David's refund claim fails by reason of

6511(b)(2)(A).

David's equitable claim, failing his deposit

argument, is based on the following facts. His time for

filing a claim for refund of a tax payment made on April 15,

1990 would expire, given the six months extension allowed for

filing the return and claim, on October 15, 1993. On that

date, however, he was in federal custody. The total picture

is that the government maintained its custody of David's

needed records from April 4, 1990 until February 21, 1992.

It then, pursuant to an agreement between David and his

former employer, released them to a third party for making

copies; neither principal party to have access without the

presence of the other until the copying was completed. For

some undisclosed reason, David did not finally get his

records until December 31, 1992.

Surely there could be no per diem charge against

the government for the time that the records were lawfully in

its custody early on; the equity issue would turn on how much

time was left, obviously there was enough. Nor should the

government be charged for the possible difficulties imposed

-5-

by David's voluntary surrender thereafter for copying. A

more serious matter, following a plea (to unrelated federal

counts) on December 10, 1992, David himself was in government

custody; January 8, 1993 to October 4, 1993, in prison; then,

to January 5, 1994, in a halfway house. Reasonably promptly

thereafter, on February 24, 1994, he filed his return and

refund claim.

In United States v. Brockamp, 117 S. Ct. 849, 852- 

53 (1997), the Court, seemingly flatly, ruled out all

equitable claims that would supplement the statutorily-given

reasons for tolling or extending the time for filing claims

for refund of tax payments. We might consider it

particularly rough for the government to lock up a taxpayer

before the time for a claim of refund would expire, and then

tell him it was too late. At the same time, we must adhere

to the Court's recognition that "Congress decided to pay the

price of occasional unfairness in individual cases

(penalizing a taxpayer whose claim is unavoidably delayed) in

order to maintain a more workable tax enforcement system."

Id. at 852; cf. Oropallo, 994 F.2d at 28-31. We do not want 

to recognize a special exception for taxpayers whose

difficulties are due to their criminal convictions.

Affirmed. 

-6-