USCA1 Opinion

 

 [NOT FOR PUBLICATION] United States Court of Appeals United States Court of Appeals for the First Circuit for the First Circuit ____________________ No. 97-1729 GEORGE W. DAVID, Plaintiff, Appellant, v. UNITED STATES OF AMERICA, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Michael A. Ponsor, U.S. District Judge] ___________________ [Hon. Kenneth P. Neiman, U.S. Magistrate Judge] _____________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Paul M. Stein with whom Malkasian, Hicinbothem & Mollica was on ______________ _________________________________ brief for appellant. Bridget M. Rowan with whom Gilbert S. Rothenberg, Attorneys, Tax ________________ ______________________ Division, Department of Justice, Loretta C. Argrett, Assistant ____________________ Attorney General, and Donald K. Stearn, United States Attorney, were ________________ on brief for appellee. ____________________ December 29, 1997 ____________________ ALDRICH, Senior Circuit Judge. In this action to _____________________ recover funds advanced to the Internal Revenue Service ("IRS") by George W. David, plaintiff-appellant, the magistrate judge's opinion, confirmed by the district court, acceptably reduced the dispute to what was the character of David's remittance, whether a tax payment or a deposit, and whether the equities overcame a decision otherwise favoring the government. On summary judgment, it found the remittance a payment, which meant that the refund claim had been made too late, and denied any equitable extension. We affirm. Shortly before April 15, 1990, when his 1989 income tax return, and payment, were to fall due, David's business records were taken into federal custody pursuant to a search warrant. Without them he could not prepare his return or, allegedly, even reasonably estimate his tax. On April 15 he filed a request on Form 4868 for an automatic four month extension of time to file his return. With this he enclosed a check for $12,000, which the IRS negotiated. He later obtained a second extension to October 15, 1990. He did not file his 1989 return, however, until February 24, 1994. On the return when filed David noted the $12,000 as an "Amount paid with Form 4868." With credits, it turned out that all that had been due was $749, and the return claimed refund of the $11,251 balance. The refund claim was timely under I.R.C. 6511(a). Cf. Oropallo v. United States, 994 ___ ________ _____________ -2- F.2d 25, 27 (1st Cir. 1993) (per curiam) (assuming that a late return is a "return" within the meaning of 6511(a)), cert. denied, 510 U.S. 1050 (1994). Unhappily, however, _____________ 6511(b)(2)(A) limited the amount of credit or refund to the amount of tax paid within the three years, plus the six months extension preceding the refund claim. Accordingly, as a claim for refund of a tax payment made on April 15, 1990, David's return was some four months too late. It was not too late if the remittance had simply been a deposit. The IRS stood on its position of payment, and David brought this suit. In his complaint, doubtless because executed pro se, he asserted that he was suing for an income tax refund of $11,251, which, inescapably, was the unused portion of his $12,000 remittance. Eventually, when he obtained counsel who examined the law, David realized that he had intended the $12,000 to be a general deposit, not the estimated tax payment (larger for safety), required to accompany his Form 4868. Concededly, whether a remittance to the IRS is a payment, or is a general deposit whose recovery would not be statutorily barred, may be a matter of intent and circumstance. See generally Rosenman v. United States, 323 ___ _________ ________ ______________ U.S. 658, 662 (1945); Moran v. United States, 63 F.3d 663, _____ _____________ 668-69 (7th Cir. 1995); Blatt v. United States, 34 F.3d 252, _____ _____________ 254-55 (4th Cir. 1994). But even if the IRS is incorrect in -3- claiming that the circumstances shown warrant finding of a tax payment as matter of law under I.R.C. 6513(b)(1), which we do not decide, but cf. Gabelman v. Commissioner, 86 F.3d ___ __ ________ ____________ 609, 612 (6th Cir. 1996) (holding remittance accompanying Form 4868 to be a payment as a matter of law under 6513(b)(1)); Weigand v. United States, 760 F.2d 1072, 1073 _______ _____________ (10th Cir. 1985) (same), it is only natural to assume that the $12,000 check was the payment that the form said was required in the absence of any assertion to the contrary. David points to no objective manifestation of his "deposit" intention at the time of remittance.1 To this we add his now counsel's inability, at oral argument, even to suggest a purpose for intending a deposit. We cannot decide in David's favor. Undoubtedly he had a tax liability on April 15, 1990. See I.R.C. 6151(a); ___ Manning v. Seeley Tube & Box Co., 338 U.S. 561, 565 (1950). _______ ______________________ His extension to file did not postpone this liability. See ___ 26 C.F.R. 1.6081-1(a) and 1.6081-4(b). His Form 4868 remittance, required to be an estimate of this liability, was made in recognition thereof. With no further showing, the presumed intention was to discharge the liability that  ____________________ 1. Neither party was able to produce David's Form 4868. His oft-repeated characterization of his remittance as "arbitrary" in calculation is insufficient in this regard. Similarly insufficient are his contentions as to the IRS's accounting practices, which reveal nothing of David's supposed deposit intent. -4- renders the remittance a payment. Cf. Moran, 63 F.3d at 668; ___ _____ Blatt, 34 F.3d at 255-57; Ewing v. United States, 914 F.2d _____ _____ _____________ 499, 504 (4th Cir. 1990), cert. denied, 500 U.S. 905 (1991); ____________ Ameel v. United States, 426 F.2d 1270, 1273 (6th Cir. 1970). _____ _____________ Accordingly, David's refund claim fails by reason of 6511(b)(2)(A). David's equitable claim, failing his deposit argument, is based on the following facts. His time for filing a claim for refund of a tax payment made on April 15, 1990 would expire, given the six months extension allowed for filing the return and claim, on October 15, 1993. On that date, however, he was in federal custody. The total picture is that the government maintained its custody of David's needed records from April 4, 1990 until February 21, 1992. It then, pursuant to an agreement between David and his former employer, released them to a third party for making copies; neither principal party to have access without the presence of the other until the copying was completed. For some undisclosed reason, David did not finally get his records until December 31, 1992. Surely there could be no per diem charge against the government for the time that the records were lawfully in its custody early on; the equity issue would turn on how much time was left, obviously there was enough. Nor should the government be charged for the possible difficulties imposed -5- by David's voluntary surrender thereafter for copying. A more serious matter, following a plea (to unrelated federal counts) on December 10, 1992, David himself was in government custody; January 8, 1993 to October 4, 1993, in prison; then, to January 5, 1994, in a halfway house. Reasonably promptly thereafter, on February 24, 1994, he filed his return and refund claim. In United States v. Brockamp, 117 S. Ct. 849, 852- ______________ ________ 53 (1997), the Court, seemingly flatly, ruled out all equitable claims that would supplement the statutorily-given reasons for tolling or extending the time for filing claims for refund of tax payments. We might consider it particularly rough for the government to lock up a taxpayer before the time for a claim of refund would expire, and then tell him it was too late. At the same time, we must adhere to the Court's recognition that "Congress decided to pay the price of occasional unfairness in individual cases (penalizing a taxpayer whose claim is unavoidably delayed) in order to maintain a more workable tax enforcement system." Id. at 852; cf. Oropallo, 994 F.2d at 28-31. We do not want ___ ___ ________ to recognize a special exception for taxpayers whose difficulties are due to their criminal convictions. Affirmed. _________ -6-